EVANS-ARISTOCRAT INDUSTRIES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. CITY OF NEWARK, DEFENDANT, AND PORT AUTHORITY OF NEW YORK AND NEW JERSEY, THIRD PARTY DEFENDANT-APPELLANT.

Argued April 26, 1977—Decided November 7, 1977.

*Mr. Hugh H. Welsh* argued the cause for appellant (*Mr. Francis A. Mulhern,* attorney).

*Mr. David Landau* argued the cause for respondent (*Messrs. Hellring, Lindeman, Landau and Siegal,* attorneys).

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for respondent Attorney General of New Jersey (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Skillman,* of counsel and on the brief; *Mr. Morton Goldfein,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

HANDLER, J. The main issue in the case is whether a private litigant is entitled to maintain an action for injunctive relief against the Port Authority of New York and New

Jersey under *N. J. S. A.* 32:1–161 where the Attorney General, although neither commencing the original action nor intending to participate as an active litigant, seeks to intervene after a review of the merits of the controversy in order that the action can be prosecuted by the plaintiff.

On October 5, 1971, plaintiff Evans-Aristocrat, Inc. instituted suit against the City of Newark in the Chancery Division, Essex County, seeking to enjoin a nuisance and to recover damages for flooding injury to its property allegedly resulting from the City's failure to repair and replace elements of its sewer system. A later pretrial order broadened the issues to include questions concerning the aggravation of flooding conditions attendant on the expansion of Newark Airport by the Port Authority. On December 20, 1972, Newark filed a third-party complaint against the Port Authority alleging that any damages suffered by plaintiff as a result of such expansion were attributable to the third-party defendant. In the alternative, Newark demanded contribution from the Port Authority for any damages assessed against it.

On January 14, 1974, plaintiff filed a notice of request for leave of court to amend its complaint to include the Port Authority as a defendant. The proposed amended complaint sought damages and injunctive relief upon the allegations that filling and construction work undertaken by the Port Authority incident to the expansion of Newark Airport adversely affected drainage patterns and caused damage by flooding to plaintiff's property.[1] By supplemental letter memorandum, dated May 24, 1974, plaintiff requested that its proposed amendment to the complaint be deemed to include as defendants the principal officers and directors of the Port Authority.

On April 2, 1974, the Attorney General moved to intervene in order to enable plaintiff to maintain its suit for

---

[1]The damages claim has been dismissed as barred by the statute of limitations and is not an issue.

injunctive relief against the Port Authority. This was intended to satisfy *N. J. S. A.* 32:1–161. The Port Authority then moved to dismiss the claim for injunctive relief on the ground that the action had not been properly instituted by the Attorney General as required by that statute. In an opinion reported at 129 *N. J. Super.* 437 (Ch. Div. 1974), the Chancery Division ruled that *N. J. S. A.* 32:1–161 prohibits suits for injunctive relief against the Port Authority unless brought initially and actively conducted by the Attorney General. The court also rejected plaintiff's attack on the constitutionality of another section of the statute, *N. J. S. A.* 32:1–165, proscribing injunctive actions against officers of the Port Authority unless brought by the Attorney General. Further, plaintiff's claim as a third-party beneficiary for specific performance of an alleged contract between the Port Authority and Newark for the construction of a pumping station designed to facilitate drainage was denied.

Following an appeal, the Appellate Division reversed the trial judge's denial of the Attorney General's motion to intervene for the purpose of enabling plaintiff to bring its action for injunctive relief against the Port Authority. 140 *N. J. Super.* 226 (App. Div. 1976). There being a dissent, this appeal was brought before us as of right. *R.* 2:2–1(a).

The factual allegations, which crystallize the issue, are sufficiently sketched in the opinions below. As alleged, plaintiff is the owner and occupant of a manufacturing establishment on Frelinghuysen Avenue in the Waverly District of Newark. Subsequent to the expansion of Newark International Airport by the Port Authority, the plant was flooded, resulting in extensive damage and business interruption. Plaintiff attributes this to negligent alterations of the established drainage patterns in the Waverly District and negligent construction and maintenance by the Port Authority in connection with the extension of the airport. It is alleged that marshland serving as a drainage basin for the Waverly District of Newark was filled by the Port Authority without providing in-kind replacement and that ob-

structive culverts were constructed, aggravating the risk of floods in the vicinity of plaintiff's property. A further assertion is that the Port Authority contracted with the City of Newark to pay for the cost of a pumping station to replace drainage capacity attendant upon the airport expansion or, alternatively, for the installation of sufficient pumping capacity to prevent deterioration of the Waverly District. It is admitted that no pumping station has been built.[2]

Counsel for Evans-Aristocrat, by letter dated February 4, 1974, requested the State of New Jersey to intervene in the pending suit as a plaintiff. Such intervention was sought pursuant to *N. J. S. A.* 32:1–161 in order to permit Evans-Aristocrat to maintain its action for injunctive relief against the Port Authority. Pleadings and various supporting documents were submitted for review by the Attorney General. After the Attorney General moved to intervene, he received a letter from counsel for the Port Authority briefly setting forth its legal position in opposition to intervention.

The Attorney General admits that he has no personal knowledge of the facts alleged in Evans-Aristocrat's complaint. It is asserted that, upon plaintiff's request that he intervene and after a review of the pleadings and attachments, the Attorney General "exercised his discretion" to intervene in the suit without filing a complaint or otherwise participating in the conduct of the litigation. The reason for this position is stated as follows:

* * * since no issue of general public importance was raised by the pending litigation, it was decided that the State would take no active position with respect to the ultimate merits of the lawsuits but would, in the interest of making the Port Authority more responsive to the needs of the public, provide instead a vehicle whereby Evans-Aristocrat could have its day in court. Brief for Attorney General at 3.

---

[2]The Chancery Division opinion states erroneously that a pumping station was, in fact, constructed. 129 *N. J. Super.* at 440.

The pivotal issue is whether under the circumstances the intervention by the Attorney General in the suit for injunctive relief brought by plaintiff against the Port Authority satisfies the requirements of *N. J. S. A.* 32:1-161. That statutory provision was included in legislation which was enacted in 1951, together with an identical statute passed by the legislature of the State of New York, granting consent to suits and "* * * proceedings of any form or nature at law, in equity or otherwise * * *" against the Port Authority. *N. J. S. A.* 32:1-157. A limitation upon this otherwise broad consent to suit was imposed with respect to certain kinds of actions, those

* * * restraining, enjoining or preventing the Port Authority from committing or continuing to commit any act or acts, other than suits, actions or proceedings by the Attorney-General of New York or by the Attorney-General of New Jersey — each of whom is hereby authorized to bring such suits, actions or proceedings in his discretion on behalf of any person or persons whatsoever who requests him so to do * * *. *N. J. S. A.* 32:1-161.

Presumably, in enacting these identical statutes, both legislatures feared the immobilization of important public projects of the Port Authority and the attendant diversion of resources which might result from suits for injunctive relief. They sought to ensure, through these statutes, that only those suits first screened by a responsible public official might be brought.

This purpose is not seriously disputed by either party. Defendant takes the position, however, that the "screening" function contemplated by the statute requires that the Attorney General file a complaint and otherwise assume control of the litigation. The trial court agreed. 129 *N. J. Super.* at 442-444. In this regard, the Port Authority points out that in the instant case the Attorney General intervened only for the purpose of "* * * making the Port Authority more responsive to the needs of the public * * *", Brief for Attorney General at 3, a reason insufficient to avoid routine interventions without meaningful evaluation of the underly-

ing litigation. It is urged, therefore, that the purpose of the statute can be fulfilled only by a requirement that the Attorney General initiate the original action for injunctive relief and participate actively in the prosecution of the litigation. In support of its position, the Port Authority cites *Lewis v. Lefkowitz, 32 Misc.* 2d 434, 223 *N. Y. S.* 2d 221 (Sup. Ct. 1961), aff'd 17 *A. D.* 2d 778 (App. Div. 1962) and *New York City Chapter, Nat'l Electrical Contractors Ass'n. v. Fabber, 73 Misc.* 2d 859, 343 *N. Y. S.* 2d 33 (Sup. Ct.), aff'd o. b. 41 *A. D.* 2d 821, 343 *N. Y. S.* 2d 558 (App. Div. 1973), discussed *infra.*

The Attorney General argues that the purpose of *N. J. S. A.* 32 :1–161 would in no way be undermined by the procedures followed in this case. It is urged that where, as here, a plaintiff submits pleadings and supporting documents, the Attorney General has ample opportunity to review the issues to be raised, and that if attempts to amend the complaint were made, "\* \* \* further review by the Attorney General would be appropriate." Brief for Attorney General at 12 n. At the heart of the Attorney General's argument is the proposition that "[t]here is no reason to presume that the Attorney General will be any less vigilant in exercising these powers of review merely because his active participation in the litigation is not mandated." *Id.* at 11–12. In fact, the Attorney General has represented to this Court during oral argument that he would feel duty-bound in the exercise of his statutory discretion to require that he be kept continuously apprised of the progress of the litigation and all developments in the course thereof, that he be served with all papers relating to the case and that he be notified of all matters such as depositions, motions, hearings, conferences and the like. He likewise acknowledged that his continuous review of the litigation is not, and cannot be, a *pro forma* or perfunctory exercise but rather an on-going, critical and diligent assessment of the controversy.

■ The issue thus projected is one of statutory construction. The pertinent language of *N. J. S. A.* 32 :1–161 pro-

vides: "* * * the Attorney-General of New Jersey * * * is hereby authorized to bring such suits, actions or proceedings in his discretion on behalf of any person or persons whatsoever who requests him so to do * * *." A literal reading of this phraseology does not provide a definitive answer as to the proper role of the Attorney General in injunctive suits against the Port Authority. By using the word "discretion", however, the Legislature obviously intended to place in the Attorney General a wide latitude of judgment in evaluating the nature and quality of the injunctive claim asserted against the Port Authority. This broad discretion encompasses an assessment as to whether such a claim for the benefit of a private litigant is proper and should be pursued.

There is no reason compelled by the language of the statute why this same flexibility of choice should not apply with as much force to the manner in which the Attorney General's decision is translated into appropriate action. Thus, insofar as the statute authorizes the Attorney General to "bring" an action or proceeding, this statutory directive could be satisfied not only by filing the original complaint but, as here, by permitting a filed complaint to be continued by the bringing of a motion to intervene on behalf of the party plaintiff. In this connection, the statute does not seem to require that the Attorney General act as the primary plaintiff or real party in interest. He is not authorized by this enactment to intercede as the attorney for the State of New Jersey but rather on behalf of "* * * any person or persons whatsoever who requests him so to do * * *." He may thus act to vindicate a wholly or dominantly private interest, and in that capacity it is entirely fitting that he be allowed to assume a secondary or passive role in the litigation and not be required in all cases to be the original complainant or an active litigant.

Reference to the sparse legislative history of *N. J. S. A.* 32:1–161 does not suggest strongly that a different and more exacting role as a litigant was sought to be imposed upon the Attorney General. The sponsor's statement ap-

pended to *Senate Bill* 183 (1951) reads in pertinent part: "The bill provides that no injunction shall lie against the Port Authority, * * * except upon complaint of the Attorney-General of either State, each of whom is expressly authorized to bring any proceeding for an injunction, in his discretion, on behalf of any person." A similar memorandum had been submitted in support of the New York legislation, *N. Y. Unconsol. Laws* § 7101 *et seq.* ,*(McKinney* 1950). *N. Y. State Leg. Ann.* 203–204 (N. Y. Leg. Serv. Inc. 1950). This simple statement, however, indicates only that the Attorney General was given the unusual authority to bring an original action for injunctive relief against the Port Authority for a private person, a role virtually unassigned to him by tradition. The statement does not demonstrate that this mode of proceeding — the filing of an original complaint — was intended to be the exclusive manner by which the Attorney General could discharge his responsibilities under the statute. Indeed, a construction of the statute which would compel the Attorney General to be the original complainant and active litigant in a controversy primarily involving the vindication of a private interest would be anomalous. This interpretation would result in the Attorney General either actively devoting the resources of his office as an advocate for private parties or, because of the obvious and more compelling demands upon him as the State's attorney, neglecting those private interests for which the Legislature sought by this statute to afford an avenue of redress.

The special responsibility placed upon the Attorney General by this legislation may be more fully appreciated by reference to common law traditions concerning the role of the Attorney General in litigation affecting private as well as public rights. Such reference to common law antecedents is instructive with respect to the construction of a statute with strong common law origins. *Carlo v. Okonite-Callender Cable Co.,* 3 *N. J.* 253 (1949); *Magierowski v. Buckley,* 39 *N. J.*

*Super.* 534 ,(App. Div. 1956); 2A *Sutherland, Statutory Construction* (4th ed. 1973), § 50.01 at 268.

The Attorney General's public role derives from the common law and, except as altered by the Legislature, his powers and duties as a governmental officer stem from the traditions of the common law. *Alexander v. N. J. Power & Light Co.,* 21 *N. J.* 373 (1956); *Van Riper v. Jenkins,* 140 *N. J. Eq.* 99 (E. & A. 1946). At common law, the special role of the Attorney General in litigation depended primarily upon the nature of the right allegedly debased. In those actions affecting public rights, the Attorney General participated actively in the litigation. *Van Riper v. Jenkins, supra* (attack on state statute); *Woulfe v. Associated Realties Corp.,* 130 *N. J. Eq.* 519 (Ch. 1942) (enforcement of easements granted to the public); *Lanning v. Commissioners of Public Instruction,* 63 *N. J. Eq.* 1 (Ch. 1902) (public trust); *Boyce v. Paddington Borough Council,* [1903] 1 *Ch.* 190; 2 *Ch.* 556; [1906] *A.C.* 1 (suit to enjoin a public nuisance); *State ex rel. Taylor v. Lord,* 28 *Or.* 498, 43 *P.* 471 (Sup. Ct. 1896) (illegal conduct by public officials affecting public rights). But in suits against public officials for an abuse of statutory powers affecting only the private plaintiff, there was no question of joining the Attorney General. *Galloway v. Lord Mayor of London,* [1866] *L. R.,* 1 *H. L.* 34 (suit by private owner to enjoin condemnation of his property as beyond public official's power under legislative grant). In controversies involving an intermixture of public and private interests, responsibility for the initiation and prosecution of such litigation was often shared between the Attorney General and the private party. *H. Hanbury, Modern Equity* ,(8th ed. 1962), at 598–599; *State ex rel. Taylor v. Lord, supra,* 43 *P.* at 474–475; *Redesdale, A Treatise on the Pleadings in Suits in the Court of Chancery,* (3rd ed. 1816), at 18. Thus, a private citizen could initiate litigation alone, without joining the Attorney General, where an interference with a public right also involved an infringement of a private right and where, al-

though no private right was invaded, the individual suffered damage peculiar to himself as a result of the public wrong. *H. Hanbury, supra,* at 598, citing *Boyce v. Paddington Borough Council, supra.*

[4] In light of the special purpose of *N. J. S. A.* 32:1–161, these common law analogues nourish an interpretation of the statute which would allow the Attorney General to respond to an action filed by a private party against the governmental entity where public as well as private rights are involved. Since the basic purpose of *N. J. S. A.* 32:1–161 is to afford private persons redress for meritorious claims against the Port Authority and simultaneously to prevent the immobilization of important public projects resulting from frivolous suits for injunctive relief, the Attorney General can properly fulfill that legislative expectation by screening, sifting and reviewing such litigation against the Port Authority with an eye toward preventing meretricious attempts to frustrate its activities. To the extent a public or governmental interest is directly implicated in such an action, a concern at common law, that is amply addressed by the requirement that the action for injunctive relief will fail unless it is authorized or approved by the Attorney General. Moreover, the active prosecution or participation required historically of the Attorney General in litigation directly affecting governmental interests finds a satisfactory substitute in the current legislative condition, necessarily inferred from the° purpose of the statute, that the Attorney General diligently track the litigation in which the primary grievant is a private party.

This screening and supervisory purpose is effectuated by a rule which preserves the role of the Attorney General as the pivotal instrument for the protection of public rights and respects his discretion to determine when the public interest requires his initiation of or active involvement in litigation. Accordingly, we hold that the Attorney General has the statutory power under *N. J. S. A.* 32:1–161 to intervene in an injunction action against the Port Authority to

enable that action to be maintained on behalf of a private litigant. If the Attorney General has not brought or joined the suit, or should he withdraw from the litigation, leaving only a private person as a claimant, this will necessarily conclude the matter and abort the action. Where the matter has proceeded, as here, by the Attorney General electing to intervene in an injunctive suit brought by a private party, his responsibility under *N. J. S. A.* 32:1–161 is satisfied by a continuous, diligent and critical review of the progress of the litigation. And while it is not incumbent upon the Attorney General to control or conduct actively the litigation, it is reasonably to be implied that the Attorney General shall be kept informed of all developments in the litigation with the full opportunity to participate. In this manner the purposes of the statute will be safeguarded.

In reaching this conclusion, we have found that neither *Lewis v. Lefkowitz, supra,* nor *New York City Chapter, Nat'l Electrical Contractors Ass'n. v. Fabber, supra,* two cases relied upon by the Port Authority, require a contrary result. Both *Lewis* and *Fabber* involved questions totally dissimilar to the issue before this Court. Hence, the observations in those cases regarding the proper role of the Attorney General in private litigation against the Port Authority are mere *dicta.*

Two other issues are raised by plaintiff. It is argued that *N. J. S. A.* 32:1–165 deprives the Chancery Court of certain of its constitutional powers under *N. J. Const.* (1947), Art. VI, § I, par. 1, Art. VI, § III, par. 4 and Art. VI, § V, par. 4. It is also contended that plaintiff is entitled to assert its claim for specific performance against the Port Authority as a third-party beneficiary of an agreement. In light of our holding with respect to the role of the Attorney General in private lawsuits against the Port Authority, resolution of these issues is unnecessary.

Affirmed.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and HANDLER—6.

*For reversal*—None.