169 N.J. Super. 403 (1979)
404 A.2d 1244
BOROUGH OF MORRIS PLAINS, TOWNSHIP OF BOONTON, TOWNSHIP OF CHATHAM, TOWNSHIP OF CHESTER, TOWNSHIP OF DENVILLE, TOWNSHIP OF EAST HANOVER, TOWNSHIP OF HANOVER, TOWNSHIP OF JEFFERSON, BOROUGH OF KINNELON, BOROUGH OF LINCOLN PARK, BOROUGH OF MENDHAM, TOWNSHIP OF MENDHAM, TOWNSHIP OF MONTVILLE, TOWNSHIP OF MORRIS, BOROUGH OF MOUNTAIN LAKES, TOWNSHIP OF PARSIPPANY-TROY HILLS, TOWNSHIP OF PASSAIC, TOWNSHIP OF PEQUANNOCK, TOWNSHIP OF RANDOLPH, BOROUGH OF RIVERDALE, TOWNSHIP OF ROCKAWAY, AND TOWNSHIP OF ROXBURY, APPELLANTS,
v.
DEPARTMENT OF THE PUBLIC ADVOCATE, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1979.
Decided July 10, 1979.
*405 Before Judges MATTHEWS, KOLE and MILMED.
Mr. John J. Harper argued the cause for appellants (Messrs. Harper & O'Brien, attorneys; Mr. Harper and Mr. Stephan C. Hansbury on the brief).
Mr. Arthur Penn, Assistant Commissioner, Department of the Public Advocate, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Advocate, attorney; Mr. Penn on the brief and supplemental letter brief; Mr. Kenneth E. Meiser, Assistant Deputy Public Advocate, on the letter brief).
Mr. Nathaniel F. Bedford, Boonton Township Attorney, filed a statement in lieu of brief on behalf of appellant Township of Boonton.
*406 Mr. Joel A. Murphy filed a statement in lieu of brief on behalf of the Borough of Florham Park (Messrs. Murphy and Kurnos, attorneys).
Mr. Lawrence D. Katz filed a statement in lieu of brief on behalf of appellant Borough of Lincoln Park (Messrs. Scangarella and Feeney, attorneys).
Mr. John R. Miller filed statements in lieu of briefs on behalf of appellants Township of Chatham and Township of Mendham (Messrs. Miller, Engel, Peer & Leonardson, attorneys).
Mr. Bernard P. Bacchetta filed a statement in lieu of brief on behalf of appellant Township of Pequannock (Mr. Karl Z. Sosland, attorney).
Mr. Frederic J. Sirota filed a statement in lieu of brief on behalf of appellant Township of Rockaway (Messrs. Wiley, Malehorn and Sirota, attorneys).
The opinion of the court was delivered by MILMED, J.A.D.
The single issue in these consolidated appeals is the propriety of the Public Advocate's decision to institute suit on behalf of himself, the Morris County Fair Housing Council and the Morris County Branch of the National Association for the Advancement of Colored People, as plaintiffs, against 27 Morris County municipalities challenging the legality of their land use plans and ordinances and seeking, among other things, injunctive and declaratory relief. The complaint in that action in lieu of prerogative writs is currently pending in the Law Division and, in essence, alleges that defendants, each a developing municipality, have adopted land use plans and ordinances which arbitrarily exclude or substantially hinder the development of housing within their borders for low and moderate-income families, in violation of the mandate of Southern Burlington Cty. *407 N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151, app. dism. and cert. den., 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975).
The named appellants[1] herein seek (1) to have us review "the factors considered by the [Public Advocate] in determining that his intervention was necessary" in the Law Division action, and (2) to have us set aside the Public Advocate's decision to institute that litigation. Pursuant to R. 2:5-4(b), the Assistant Commissioner of the Department of the Public Advocate filed with this court a statement of the items comprising the record on appeal, listing (1) the complaint filed in the Law Division action, and (2) an affidavit of Stanley C. Van Ness, the Public Advocate, dated December 19, 1978. Apparently deeming the statement inadequate, appellants moved to compel the Public Advocate "to produce the factual record upon which [he] concluded that a public interest existed which would not be adequately represented without [his] intervention," and "to supplement the record on appeal by the taking of additional evidence pursuant to R. 2:5-5(b)." We denied that motion. The discovery sought was, in the circumstances, entirely inappropriate. See Dunlop v. Bachowski, 421 U.S. 560, 572-574, 95 S.Ct. 1851, 44 L.Ed.2d 377, 389-390 (1975), and cf. State v. Mitchell, 164 N.J. Super. 198, 202 (App.Div. 1978).
While agreeing that the decision of the Public Advocate to institute the litigation is subject to judicial review, see Delaney v. Penza, 151 N.J. Super. 455, 458-459 (App.Div. 1977), and cases cited therein, and cf. Dunlop v. Bachowski, supra, the parties disagree as to the proper standard of review. The Public Advocate argues that the role of this court must be limited to a review of the complaint filed in the Law Division and his affidavit of December 19, 1978, "to determine whether it evinces a good faith effort to fulfill the Advocate's statutory responsibilities." He maintains that "justice only *408 requires judicial intervention to protect the public in limited circumstances where the Advocate's action is utterly baseless and arbitrary on the face of the complaint itself." He suggests that our review be limited to determining whether his "action is so irrational or so patently abusive as to constitute his decision a violation of his public trust." Appellants ask us to fashion a standard of review "as circumstances dictate and the public interest requires." They urge that "justice and fundamental fairness require at least a threshold determination by the courts as to the propriety of Public Advocate's actions." They contend that if we accept "the position of the Public Advocate regarding the limits of his authority, the statute conferring such authority must be struck down as unconstitutional," since it would then violate "the fundamental constitutional principle that all legislative delegation be carefully limited" or circumscribed. Finally, they suggest that "[b]ecause of the paucity of information provided by the Public Advocate," this court "cannot determine the legitimacy of [his] decisions leading up to the institution of suit against the municipalities," and we must, therefore, "declare the challenged decision of the Public Advocate null and void or, at the very least, require [him] to provide substantiation for his acts."
In his affidavit of December 19, 1978 the Public Advocate asserts: that he authorized the filing of the lawsuit against the 27 municipalities pursuant to the authority conferred upon him by N.J.S.A. 52:27E-32(b), part of the Department of the Public Advocate Act of 1974, N.J.S.A. 52:27E-1 et seq.; that in doing so he "conscientiously and in good faith considered the importance and extent of the public interest involved and whether that interest would be adequately represented without the action of" the Department of the Public Advocate; that he "determined that the issues involved were imbued with a highly significant public interest" as set forth in the complaint which was filed, "affecting a broad class of citizens of this State"; that he "determined that the lawsuit had ample factual and legal support"; that *409 in reaching his determination to institute suit he had numerous discussions with his legal staff; that his staff had "assessed the land use regulations" of each of the municipalities in Morris County; that "[t]he housing situation in several counties, including Morris, was in fact analyzed regarding the zoning of vacant developable land, present and future population, income, present and future employment and the amount, type, value and cost of housing," and that
In considering whether the public interest involved would be adequately protected without the action of my Department, I carefully weighed and balanced many factors including the nature of the proofs needed to establish a cause of action, and the resources and expertise available to me, to other public advocacy groups and to our potential plaintiffs. I was aware of the resources otherwise available without the action of my Department because members of my staff had made personal inquiry of advocacy groups and our potential plaintiffs regarding their ability to litigate. I concluded that the complexity of litigating a lawsuit against 27 municipalities and the resources available required the representation of my Department because the public interest involved would not otherwise be adequately represented. Moreover, I also determined that the interests involved were of such overwhelming public significance as to justify the legal involvement of my Department.
Several sections of the Department of the Public Advocate Act of 1974, prescribing functions, powers and duties of the Public Advocate and the Division of Public Interest Advocacy in the Department, are particularly pertinent here:
N.J.S.A. 52:27E-4. The Public Advocate, as administrator and chief executive officer of the department, shall:

* * * *
e. Institute or cause to be instituted such legal proceedings or processes consistent with the rules governing the courts of New Jersey and the practice of law therein as may be necessary properly to enforce and give effect to any of his powers or duties;

* * * *
h. Perform, exercise and discharge the functions, powers and duties of the department through such divisions as may be established by this act or otherwise by law;

* * * *
*410 N.J.S.A. 52:27E-28. There is hereby established in the Department of the Public Advocate the Division of Public Interest Advocacy under the supervision of the Director of the Division of Public Interest Advocacy, who shall be an attorney-at-law of this State.
N.J.S.A. 52:27E-29. The Division of Public Interest Advocacy may represent the public interest in such administrative and court proceedings, other than those under the jurisdiction of the Division of Rate Counsel pursuant to Article II herein, as the Public Advocate deems shall best serve the public interest.
N.J.S.A. 52:27E-30. As used in this act, public interest shall mean an interest or right arising from the Constitution, decisions of court, common law or other laws of the United States or of this State inhering in the citizens of this State or in a broad class of such citizens.
N.J.S.A. 52:27E-31. The Public Advocate shall have sole discretion to represent or refrain from representing the public interest in any proceeding. He shall consider in exercising his discretion the importance and the extent of the public interest involved and whether that interest would be adequately represented without the action of the department. If the Public Advocate determines that there are inconsistent public interests involved in a particular matter, he may choose to represent one such interest based on the considerations in this section, to represent no interest in that matter, or to represent one such interest through the Division of Public Interest Advocacy and another or others through other divisions of the department or through outside counsel engaged on a case basis.
N.J.S.A. 52:27E-32. The Division of Public Interest Advocacy may represent and protect the public interest by:
a. Intervening in or instituting proceedings before any department, commission, agency or board of the State leading to an administrative adjudication or administrative rule as defined in section 2 of P.L. 1968, c. 410 (C. 52:14B-2).
b. Instituting litigation on behalf of a broad public interest when authorized to do so by the Public Advocate.
N.J.S.A. 52:27E-42. Any action brought by the Public Advocate or any persons authorized herein to institute or participate in actions before the courts or agencies of this State shall be brought in the name of the person serving as the Public Advocate or in the name of an affected individual or group, but shall not be brought in the name of the State or the people thereof.
The need for us to refrain from substituting our judgment for the Public Advocate's judgment is an important factor in determining the applicable standard of review. In light of the broad authority conferred upon the Public Advocate by the several sections of the governing *411 statute quoted above, it is clear to us that here our review should be confined to examination of the complaint filed in the Law Division and the Public Advocate's affidavit of December 19, 1978, and the determination whether these documents demonstrate that the Public Advocate's decision to institute the litigation "is so irrational as to constitute the decision arbitrary and capricious." Dunlop v. Bachowski, supra, 421 U.S. at 572-573, 95 S.Ct. at 1860, 44 L.Ed.2d at 389. From our review of the complaint and affidavit we are entirely satisfied that the decision to litigate was obviously not in any way irrational, arbitrary or capricious. It was, rather, an altogether reasonable exercise by the Public Advocate of the discretion given him by the Legislature to authorize the institution, by the Division of Public Interest Advocacy in the Department of the Public Advocate, of litigation "on behalf of a broad public interest." N.J.S.A. 52:27E-32(b).
The "public interest" which the Public Advocate indicates he seeks to represent in the lawsuit is described in the opening paragraph of the complaint filed in the action. It reads:
This is an action brought by the Morris County Fair Housing Council, the Morris County Branch of the N.A.A.C.P. and the Public Advocate for injunctive and declaratory relief challenging the constitutionality and legality of the defendants' land use plans and ordinances. Plaintiffs allege that the defendants, through their land use plans and ordinances, have misused their delegated municipal authority and have created, by design and effect, upper class, predominantly white communities in Morris County. Despite the known existence of a housing crisis for low and moderate income persons, defendants have knowingly and arbitrarily excluded or unnecessarily constrained the construction of housing affordable to low, moderate and, even, middle income persons. This has precluded persons of low and moderate incomes from securing needed housing in the defendant municipalities and from sharing in their growth and development. Absent judicial intervention, these unconstitutional and unlawful practices will continue to exacerbate the existing housing crisis, foster the polarization of economic and racial groups within the Morris County region and undermine efforts to create an equal housing opportunity and a decent environment for all citizens regardless of economic status or race. [Emphasis supplied] *412 The "public interest" so disclosed falls well within the ambit of the statutory definition of the term. See N.J.S.A. 52:27E-30, above quoted. As Justice Hall stated in his opinion for the court in Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., supra:
"The question of whether a citizenry has adequate and sufficient housing is certainly one of the prime considerations in assessing the general health and welfare of that body." New Jersey Mortgage Finance Agency v. McCrane, 56 N.J. 414, 420 (1970). Cf. DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428, 442 (1970). The same thought is implicit in the legislative findings of an extreme, long-time need in this state for decent low and moderate income housing, set forth in the numerous statutes providing for various agencies and methods at both state and local levels designed to aid in alleviation of the need. * * *
It is plain beyond dispute that proper provision for adequate housing of all categories of people is certainly an absolute essential in promotion of the general welfare required in all local land use regulation. [67 N.J. at 178-179]
It is quite apparent that in arriving at his decision to institute the litigation, the Public Advocate properly adhered to the statutory guidelines for the exercise of his discretion in the matter. In the circumstances these guidelines sufficiently circumscribe the exercise of that discretion while properly allowing for the meaningful effectuation of the policy of the legislation. We discern no constitutional infirmity in N.J.S.A. 52:27E-31.
The decision of the Public Advocate under review is affirmed.
NOTES
[1] 22 of the 27 municipalities have filed notices of appeal.