TOWNSHIP OF MOUNT LAUREL, A MUNICIPAL CORPORATION; EDWIN MCCOY AND ANNE W. BALIKOV, PLAINTIFFS-APPELLANTS, v. DEPARTMENT OF THE PUBLIC ADVOCATE OF THE STATE OF NEW JERSEY AND STANLEY C. VAN NESS, IN HIS INDIVIDUAL CAPACITY AS WELL AS IN HIS CAPACITY AS THE PUBLIC ADVOCATE, DEFENDANTS-RESPONDENTS.

TOWNSHIP OF MOUNT LAUREL, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT, v. DEPARTMENT OF THE PUBLIC ADVOCATE OF THE STATE OF NEW JERSEY; STANLEY C. VAN NESS, IN HIS INDIVIDUAL CAPACITY AS WELL AS HIS CAPACITY AS THE PUBLIC ADVOCATE, DEFENDANTS-RESPONDENTS.

Argued April 22, 1980—Decided July 21, 1980.

*John E. Patton* argued the cause for appellants (*Gaccione, Pomaco, Patton & Beck*, attorneys).

*Arthur Penn*, Asst. Commissioner, argued the cause for respondents (*Stanley C. Van Ness, Public Advocate of New Jersey*, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal challenges the constitutionality of the "Department of the Public Advocate Act of 1974," *N.J.S.A.* 52:27E–1 to –47. Plaintiffs, a township and two of its resident taxpayers, assert two constitutional infirmities in the statute: (1) the discretionary authority delegated to the Public Advocate is so broad as to violate the separation of powers provision of the New Jersey Constitution, Article 3, paragraph 1; and (2) the Public Advocate spends public funds for private purposes, in violation of Article 8, section 3, paragraph 3. In addition, plaintiffs seek reimbursement from the Public Advocate pursuant to *N.J.S.A.* 52:27E–31 for legal expenses incurred in the defense of a lawsuit prosecuted in part by the Public Advocate. We reject plaintiffs' contentions and uphold the constitutionality of the Public Advocate Act. We likewise deny the claim for monetary damages based on litigation expense.

I

These actions were brought in the wake of our decision in *Southern Burlington County NAACP v. Township of Mt. Laurel,* 67 *N.J.* 151, appeal dismissed and *cert.* denied, 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.2d* 28 (1975) (hereinafter *Mt. Laurel I* ), which directed the defendant Township to modify its exclusionary zoning ordinance. After *Mt. Laurel I* the Public Advocate commenced representation of Township's adversaries in that case, both on its appeal to the United States Supreme Court and in a second action to force compliance with *Mt. Laurel I. Southern Burlington County NAACP v. Township of Mt. Laurel,* 161 *N.J.Super.* 317 (Law Div.1978), certif. granted, 84 *N.J.* 413 (1980) (hereinafter *Mt. Laurel II* ).

On May 2, 1977, a few days before the *Mt. Laurel II* trial, Mt. Laurel's attorneys asked the Public Advocate, defendant Stanley C. Van Ness, to engage outside counsel for the Township, reasoning that conflicting public interests were involved in the *Mt. Laurel II* litigation. Under *N.J.S.A.* 52:27E–31, the Public Advocate may appoint outside counsel to accommodate a conflicting public interest.

On May 19, 1977, the Public Advocate denied the request for legal assistance because of the absence of conflicting public interests. Van Ness stated that his office was seeking only to enforce an order of the New Jersey Supreme Court and that violators of such an order—that is, the Township—could not be deemed to be serving a public interest as required by the statute.

After a lengthy trial, the court generally upheld the Township's ordinances. *Mt. Laurel II, supra.* Some two months later, and over 16 months after their original request, the Township's attorneys sent a "notice of claim" letter to the Public Advocate demanding payment of $108,000, the amount of the Township's legal expenses for the defense of *Mt. Laurel II.* Counsel claimed these fees were incurred because the Public Advocate arbitrarily and unreasonably refused to appoint independent counsel to represent Mt. Laurel's interest in the *Mt. Laurel II* litigation. Van Ness denied this second request as untimely.

Plaintiffs' attorneys thereupon appealed from this administrative determination, *R.* 2:2–3(a), and simultaneously commenced suit in the Superior Court, Law Division, on behalf of the Township and the taxpayer plaintiffs, seeking the relief set forth above. The trial court dismissed plaintiffs' claims. We ordered direct certification of plaintiffs' appeals pending unheard in the Appellate Division. 82 *N.J.* 291 (1980); *R.* 2:12–1.

## II

Plaintiffs direct their attack at the Division of Public Interest Advocacy, *N.J.S.A.* 52:27E–28 to –32, one of the six divisions comprising the Department of the Public Advocate.[1] The Public Interest Advocacy Division has been described as "the nation's

---

[1]The other divisions are the Office of the Public Defender, *N.J.S.A.* 52:27E–9; the Office of Inmate Advocacy, *N.J.S.A.* 52:27E–10; the Division of Rate Counsel, *N.J.S.A.* 52:27E–16; the Division of Mental Health Advocacy, *N.J.S.A.* 52:27E–21; and the Division of Citizen Complaints and Dispute Settlement, *N.J.S.A.* 52:27E–33.

first and only government-sponsored public interest law firm", *1977 Annual Report, New Jersey Department of the Public Advocate* 1 (1978).

The purpose of the Division is to represent the "public interest" in administrative and court proceedings. *N.J.S.A.* 52:27E–29. This representation includes the power to institute litigation as well as to intervene in proceedings already commenced. *N.J.S.A.* 52:27E–32.

The Public Advocate has been delegated the authority to determine the public interests it will support and the proceedings in which it will support them.

> The Public Advocate shall have sole discretion to represent or refrain from representing the public interest in any proceedings. He shall consider in exercising his discretion the importance and the extent of the public interest involved and whether that interest could be adequately represented without the action of the department. If the Public Advocate determines that there are inconsistent public interests involved in a particular matter, he may choose to represent one such interest based on the considerations in this section, to represent no interest in that matter, or to represent one such interest through the Division of Public Interest Advocacy and another or others through other divisions of the department or through outside counsel engaged on a case basis. [*N.J.S.A.* 52:27E–31.]

The "public interest" as used in the statute is defined as

> an interest or right arising from the Constitution, decisions of court, common law or other laws of the United States or of this State inhering in the citizens of this State or in a broad class of such citizens. [*N.J.S.A.* 52:27E–30.]

This necessarily broad definition is supplemented by more detailed administrative regulations.

> Decision to represent particular public interest.
>
> (a) The division may not represent the public interest without the approval of the Public Advocate. The Public Advocate shall have sole discretion to represent or refrain from representing the public interest in any proceeding.
>
> 1. In determining the importance of the public interest involved, the Public Advocate may consider one or all of the following:
>
> i. Whether the issue affects the health, safety or general welfare of the citizens affected;
>
> ii. Whether the issue concerns governmental operations at either the Federal, State, county or municipal level which, if unresolved, will impair the quality of government services to the citizens affected; or otherwise affect the relationship of citizens to government;
>
> iii. Whether the issue has a substantial economic impact on the citizens affected;
>
> iv. Whether the issue has a substantial economic impact on municipal, county, State or Federal government;

v. Whether the issue may have substantial precedential value; and

vi. Whether the issue otherwise substantially affects the quality of life for the citizens affected.

2. In determining the extent of the public interest involved, the Public Advocate shall consider whether the number of citizens affected in the particular action or its resolution is substantial.

3. In determining whether the public interest would be adequately represented without the action of the department, the Public Advocate may consider one or all of the following:

i. Whether that interest is being fully represented by private parties; the Public Advocate may determine to become involved even if the primary parties to the dispute are represented, if such parties may not represent the full public interest in the dispute;

ii. Whether the citizens affected are members of a group, association or political subdivision which can practically provide representation and such group representation will fully represent the public interest as well; and

iii. Whether the citizens affected have sufficient financial ability or incentive to retain competent counsel.

4. The Public Advocate may refrain from representing any public interest if it appears the cost of representation to the State substantially outweighs the public interest involved.

5. Where several public interests are involved in a single dispute or litigation, the Public Advocate may examine each interest and elect to represent one interest.

6. Where there are several conflicting public interests involved in a single dispute or litigation, the Public Advocate may choose to have the division represent one interest and arrange for separate representation of the conflicting interest or interests. Alternatively, the Public Advocate may choose to refrain from representing any of the competing interests. [*N.J.A.C.* 15A:1–1.6.]

The purposes embodied in these guidelines are highlighted in the legislative history of the statute. The Assembly Statement provides that the Public Advocate may act "to ensure that important perspectives of the public interest, which would otherwise be unrepresented, will be brought to the attention of the appropriate administrative agencies and courts." Assembly Statement to Assembly Bill No. 1409, "Department of the Public Advocate Act of 1974." In the public hearing on the Bill in the Senate, Senator Merlino described its purpose as follows:

What it does seek to do is to introduce into government a new force on behalf of the people, and of the *public* who will probe the law and test it to see what benefits and safeguards can be won for *plain folks*, for people who don't have hordes of lawyers in their pay. Should the public not have *its* advocate ready, and at work, while the big private interests have theirs quietly in the field? [Public Hearing before New Jersey Senate State Government and Federal and Interstate Relations Committee, April 15, 1974, p. 4.]

Since its inception the Department of the Public Advocate has represented varied interests, ranging from beach access to voting rights to assistance for crime victims. See generally Note, "The Department of the Public Advocate—Public Interest Representation and Administrative Oversight," 30 *Rutgers L.Rev.* 386 (1977).

## III

### A

The first prong of the plaintiffs' attack on the Department of the Public Advocate is predicated on the separation of powers clause of the New Jersey Constitution, Article 3, paragraph 1.[2]

Plaintiffs argue that in creating the Department the legislature abdicated its power to determine what is in the public interest. According to plaintiffs only the legislature and the judiciary have the power to determine the public interest. Hence, they conclude, the Public Advocate, as part of the executive branch of state government, may not be vested with the power to determine what is in the public interest.

Plaintiffs misconstrue the nature of the separation of powers doctrine. That doctrine was not intended to be an absolute and inviolable division of powers among the three branches of government. *State v. Leonardis*, 73 *N.J.* 360, 370 (1977). Such a rigid classification is impractical and would eliminate much of the recognized power already possessed by each branch. *David v. Vesta Co.*, 45 *N.J.* 301, 324 (1965). The separation of powers clause is not designed "to prevent cooperative action among the three branches of government, but to guarantee a system of checks and balances." *State v. Leonardis, supra*, 73 *N.J.* at 370. As former Chief Justice Vanderbilt

---

[2]The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution. [*N.J.Const.*, Art. 3, ¶ 1.]

summarized: "The doctrine of separation of powers is the great contribution of Anglo-American lawyers to the prevention of absolutism and the preservation of the rights of the individual against the State." *Mulhearn v. Federal Ship Building & Dry Dock Co.*, 2 *N.J.* 356, 364 (1949).

■ The creation of the Department of the Public Advocate was not antithetical to the separation of powers doctrine but complementary thereto. The Department serves as a watchdog to guarantee the system of checks and balances and to preserve the rights of the individual. To this end the powers of the Public Advocate differ from those of the legislature and judiciary. The Public Advocate does not create law as the legislative branch does, nor does it interpret or mold the law as does the judicial branch. Rather, the Public Advocate uses its resources to evaluate the public policy as that policy is reflected in the Constitution, statutes, and court decisions. *N.J.S.A.* 52:27E–30. With that evaluation the Advocate offers assistance to those who seek to vindicate the public policy before law-making or law-interpreting bodies such as administrative agencies or the judiciary. The Public Advocate acts to enforce the public interest rather than to create it. In so doing it performs the classic function of the executive branch of government. Creation of public interest necessarily remains with the other branches of government.

B

In the second part of their separation of powers attack plaintiffs claim that the Department of the Public Advocate lacks sufficient statutory standards to circumscribe the proper exercise of its discretion. Plaintiffs rely primarily upon *Panama Refining Co. v. Ryan*, 293 *U.S.* 388, 55 *S.Ct.* 241, 79 *L.Ed.* 446 (1935), and *A.L.A. Schechter Poultry Corp. v. United States*, 295 *U.S.* 495, 55 *S.Ct.* 837, 79 *L.Ed.* 1570 (1935), two early New Deal cases whose holdings have been consistently distinguished by the United States Supreme Court. *See* 1 K. C. Davis, Administrative Law Treatise § 3.8 (2nd ed. 1978 & Supp.1980). ("The current law is not in the *Panama* and *Schechter* opinions.")

■ It is well-established that within limits the legislature may delegate its authority to a governmental agency. *See, e. g., Heir v. Degnan*, 82 *N.J.* 109 (1980). *See also* Davis, *supra* § 3.2. The courts in New Jersey allow liberal delegation of legislative powers of the sort accorded the Public Advocate. *Cf. Division 540 v. Mercer County Improvement Auth.*, 76 *N.J.* 245, 252 (1978) (labor arbitrator must consider public interest and impact of his decision on public welfare). As long as the discretion of administrative officers is "hemmed in by standards sufficiently definitive to guide its exercise," the delegation of legislative powers is not unconstitutional. *Cammarata v. Essex County Park Commission*, 26 *N.J.* 404, 410 (1958).

■ These standards may be quite general, *New Jersey Bell Telephone Co. v. Communications Workers*, 5 *N.J.* 354, 371 (1950), or may be implied, *Motyka v. McCorkle*, 58 *N.J.* 165, 177–78 (1971). This Court has held a command to promulgate regulations for "public convenience and necessity" to be sufficiently definite. *Ward v. Scott*, 11 *N.J.* 117, 123–24 (1952). *See also Federal Communications Commission v. RCA Communications, Inc.*, 346 *U.S.* 86, 90, 73 *S.Ct.* 998, 1002, 97 *L.Ed.* 1470 (1953) (standard of "public interest, convenience or necessity" not too indefinite for fair enforcement and is "as concrete as the complicated factors for judgment in such a field of delegated authority permit").

■ The requirement that standards accompany the delegation of power serves three basic purposes. First, it prevents the Legislature from abdicating its political responsibility and prevents undemocratic, bureaucratic institutions from wielding all-encompassing, uncontrollable government power. Second, limiting standards define the area in which the agency develops the experience and expertise that the legislature has neither the time nor resources to develop. With too broad a standard the agency stands in no better position than the legislature that created it. Third, and most important, standards facilitate judicial review of agency decisions, which guards against arbitrary and capricious governmental action. As long as the statu-

tory standards achieve these purposes, such standards should be considered sufficiently definite to pass constitutional muster.

■ The "public interest" guidelines adequately serve these purposes. The legislature did not abdicate its political responsibility when it permitted the Public Advocate to make legal evaluations of the "public interest." The Public Advocate must look to court decisions and existing laws to determine a clear public interest and thus channel his discretion. *Cf. Vasquez v. Glassboro Service Assoc. Inc.*, 83 *N.J.* 86, 98 (1980) (slip op. at 13) (sources of public policy include federal and State legislation and judicial decisions). The Public Advocate does not legislate or necessarily choose among competing principles of broad public policy as the legislature does; the Public Advocate does not create law in the strict sense. The actual policy decisions are still left to the law-making bodies such as the courts and administrative agencies. In addition, judicial review protects the public from arbitrary or ill-conceived action by the Public Advocate.

■ Challenges to the breadth of the Public Advocate's discretionary power have been considered and rejected by other courts. *See Borough of Morris Plains v. Department of Public Advocate*, 169 *N.J.Super.* 403 (App.Div.1979); *Delaney v. Penza*, 151 *N.J.Super.* 455 (App.Div.1977); *Edmond v. Department of Public Advocate*, 137 *N.J.Super.* 82 (1975), certif. den., 69 *N.J.* 445 (1976); *Van Ness v. Borough of Deal*, 139 *N.J.Super.* 83 (Ch.Div.1975), rev'd on other grounds, 145 *N.J.Super.* 368 (App. Div.1976), rev'd in part, 78 *N.J.* 174 (1978).[3] In *Deal*, the court

---

[3]Although neither party has raised the issue, it is clear that courts have the power to review the decisions of the Public Advocate. See, for example, *Borough of Morris Plains v. Department of Public Advocate, supra*; *Delaney v. Penza, supra*; *Edmond v. Department of Public Advocate, supra*. As counsel for the Public Advocate conceded at oral argument, the Public Advocate's exercise of discretion is always subject to judicial review for arbitrariness, and his decision to deny representation must be set aside if it is unreasonable, arbitrary and capricious. *See Borough of Morris Plains v. Department of Public Advocate, supra*, 169 *N.J.Super.* at 411. The plaintiffs bear the burden of proof on this issue. *See In re Environmental Hearings on*

analogized the discretion of the Public Advocate to the discretion of the Attorney General who must act on behalf of the "State interest." 139 *N.J.Super.* at 93–94. *See also Evans-Aristocrat Industries, Inc. v. Newark*, 75 *N.J.* 84 (1977). While the Court noted that the Public Advocate's powers were very broad, such breadth was necessary to effectuate the purposes of the act. *Id.* at 94.[4]

## IV

In the second prong of their attack plaintiffs charge that the Public Advocate spends public funds for private purposes in violation of New Jersey Constitution, Article 8, section 3, paragraph 3.[5] That constitutional provision is designed to insure that public money is used for public purposes. *Roe v. Kervick*, 42 *N.J.* 191, 207 (1964).

This Court has recognized that the concept of public purpose is a broad one "incapable of exact or perduring definition." *Id.* There we defined the public purpose as

activity which serves as a benefit to the community as a whole, and which, at the same time is directly related to the functions of government. * * * In each instance where the test is to be applied the decision must be reached with reference to the object sought to be accomplished and to the degree and manner in which the object affects the public welfare. [*Id.*]

It follows that the functioning of the Public Advocate is intimately and inherently related to the functioning of the government. The mere fact that a public expenditure benefits a private party does not render it violative of this clause. *Id.* at 218. In general the Public Advocate cannot violate this constitutional provision without violating his statu-

---

*Hackensack Meadowlands Sports Complex*, 62 *N.J.* 248, 252, *cert.* den., 414 *U.S.* 989, 94 *S.Ct.* 291, 38 *L.Ed.2d* 228 (1973).

4At least one other state uses this broadly-defined grant of power. *See* *Fla.Stat.Ann.* § 350.0611 (before Public Service Commission, Public Counsel may urge any position he believes to be in the public interest).

5 No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever. [*N.J.Const.*, Art. 8, § 3, ¶ 3.]

tory and administrative standards under which he is to act. In the instant case the enforcement of this Court's *Mt. Laurel I* decision is manifestly for the benefit of many persons in this State and for a public purpose. The Public Advocate's representation of the *Mt. Laurel I* plaintiffs in their suit to enforce this Court's decision clearly served a public purpose. We therefore reject the plaintiffs' request for reimbursement pursuant to *N.J.S.A.* 52:27E–31 for legal expenses incurred in the defense of *Mt. Laurel II.* Not only was the request untimely, see *N.J.A.C.* 15A:1–1.7; *R.* 2:2–3(a)(2); *R.* 2:4–1(b), but we find it to be plainly without merit. The Public Advocate's decision was well-reasoned, based upon sufficient information and knowledge of the issue involved, and clearly within his discretion.

V

Our statutes and reported decisions are rife with reference to the concept of the public interest. In this context there can be no separation of powers problem, because all three branches of government must be committed to the public interest. One shining example of that commitment is the creation of the Department of the Public Advocate. As commentators have noted, our Public Advocate is "clearly the strongest public advocacy office in the country because of its grant of authority and its organization." Note, "The Office of Public Counsel: Institutionalizing Public Interest Representation in State Government," 64 *Georgetown L.J.* 896, 900–01 (1976).

The practice of public interest law is a much needed catalyst in our legal system. It helps to create a balance of economic and social interests and to assure that all interests have a fair chance to be heard with the help of an attorney.

> Public interest lawyers today provide representation to a broad range of relatively powerless minorities—for example, the mentally ill, children, and the poor of all races. They also represent neglected but widely diffuse interests that most of us share as consumers and as individuals in need of privacy and a healthy environment. [Marshall, "Financing Public Interest Law Practice: The Role of the Organized Bar," 61 *A.B.A.J.* 1487 (1975).]

The vital need to hold the government accountable to those it serves and the need to provide legal voices for those muted by

poverty and political impotence cannot be overemphasized. The Public Advocate goes far toward satisfying these needs, thereby nourishing and revitalizing our political system. The legislative definition of "public interest" constitutes a realistic attempt to create an effective advocate for the general public. The legislature could have delineated particular substantive areas and thus limited the Public Advocate, but it chose not to do so, a decision which was clearly within its prerogative. Plaintiffs' real complaint here is that the Public Advocate is free to litigate cases which do not fit into the plaintiffs' ideological mold. The Constitution, however, is not bound to any one group's vision of the political order. Although public interest may elude a universally satisfactory definition, *see, e. g.*, Cahn & Cahn, "Power to the People or the Profession?—The Public Interest in Public Interest Law", 79 *Yale L.J.* 1005 (1970), we cannot say that the creation of the Department of the Public Advocate is unconstitutional. Indeed, the Public Advocate admirably furthers the principles embodied in our Constitution.

Affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.