204 N.J. Super. 44 (1985)
497 A.2d 890
IRWIN I. KIMMELMAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, APPELLANT,
v.
JANE BURGIO, SECRETARY OF STATE OF THE STATE OF NEW JERSEY, RESPONDENT, AND THE SENATE AND GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, INTERVENING-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1985.
Decided September 11, 1985.
*46 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and LONG.
Michael R. Cole, First Assistant Attorney General, argued the cause for appellant (Irwin I. Kimmelman, Attorney General, attorney pro se; Michael R. Cole, of counsel; William Harla and Ross A. Lewin, Deputy Attorneys General, on the brief).
John J. Degnan argued the cause for respondent Burgio (Shanley & Fisher, attorneys; John J. Degnan and Michael Faigen, on the brief).
Leon Sokol argued the cause for respondent Senate of the State of New Jersey (Greenstone & Sokol, attorneys; Leon *47 Sokol, of counsel, and Leon Sokol and Burton J. Jaffee, on the brief).
Lawrence T. Marinari argued the cause for respondent General Assembly of the State of New Jersey (Marinari & Farkas, attorneys; Lawrence T. Marinari, of counsel, and on the brief).
The opinion of the court was delivered by GREENBERG, P.J.A.D.
This matter comes on before this court on appeal from a decision of the secretary of state placing a proposed amendment to the New Jersey Constitution on the ballot at the 1985 general election. The secretary contemplates including on the ballot both the question to the electorate and an interpretive statement as formulated by the Legislature pursuant to N.J.S.A. 19:3-6. The attorney general appeals from this decision on the grounds that the resolution proposing the amendment is ambiguous and unclear, fails to inform the voters of its intended effect and is not susceptible to interpretation. He requests that we order the amendment stricken from the ballot.
This case may be said to have its origins in the Legislative Oversight Act, L. 1981, c. 27, N.J.S.A. 52:14B-4.1 et seq. That statute permitted the Legislature to veto by concurrent resolution rules proposed by administrative agencies. As the statute was about to become effective the attorney general by formal opinion concluded it was unconstitutional and thereupon Governor Byrne informed his cabinet of this opinion and advised those officers to disregard the act in rule making activities.
Litigation in which the Senate and General Assembly sought a declaration that the Legislative Oversight Act was unconstitutional ensued. The Supreme Court resolved the case with its holding on July 22, 1982 that the act was unconstitutional under the separation of powers and presentment clauses of the New Jersey Constitution, N.J. Const. (1947), Art. III, par. 1; Art. V, § 1, par. 14. General Assembly of State of New Jersey v. *48 Byrne, 90 N.J. 376 (1982). The separation of powers clause requires a division of government into three branches and the presentment clause requires that bills passed by the Legislature be presented to the Governor for approval or veto.
There was a legislative response to the Supreme Court decision that was extraordinarily prompt by any standard. The same day as the decision 30 senators sponsored and introduced Senate Concurrent Resolution No. 133. The resolution, however, did not seek to amend directly either the separation of powers or presentment clauses of the constitution. Instead it proposed that N.J. Const. (1947), Art. V, § 4, par. 6, establishing procedures for filing and publication of certain administrative rules and regulations, be amended by the addition of the following language:
In accordance with such rules as it may adopt, the Legislature may invalidate any rule or regulation, in whole or part, and may prohibit any proposed rule or regulation, in whole or part, by a majority of the authorized membership of each House.
The resolution also set forth the form of the question on the ballot as follows:
CONSTITUTIONAL AMENDMENT LEGISLATIVE DISAPPROVAL OF RULES AND REGULATIONS
Shall the amendment to Article V, section IV, paragraph 6 of the Constitution, agreed to by the Legislature, authorizing the Legislature to prohibit proposed administrative rules and regulations from taking effect and to invalidate existing rules and regulations, be adopted?
An interpretive statement to appear on the ballot (see N.J.S.A. 19:3-6) reading as follows was included in the resolution:
INTERPRETIVE STATEMENT
State executive agencies are authorized by law to issue rules and regulations which have the force and effect of law. The Legislature has the duty to review those rules and regulations to see if they carry out the intention of the Legislature as contained in law and if they are efficient and effective. This amendment provides a constitutional recognition of this oversight role by *49 permitting the Legislature to prohibit proposed rules from taking effect and to invalidate existing rules.
A statement attached to the resolution recited that: "This constitutional amendment provides the Legislature with the authority to prohibit proposed administrative rules from taking effect and to invalidate existing rules."
A statement from the Senate Government, Federal and Interstate Relations and Veterans Affairs Committee dated May 12, 1983, before the Senate adopted Resolution No. 133, recited that:
This resolution would amend the State Constitution to allow the Legislature to invalidate, in whole or in part, any existing rule or regulation and to prohibit, in whole or in part, any proposed rule or regulation. Such invalidation or prohibition shall require a majority of the authorized membership of each house.
The resolution was adopted in the Senate and sent to the General Assembly. Prior to the General Assembly considering the resolution its Judiciary, Law, Public Safety and Defense Committee issued the following statement:
This resolution would amend the State Constitution to allow the Legislature to invalidate, in whole or in part, any existing rule or regulation and to prohibit, in whole or in part, any proposed rule or regulation. Such invalidation or prohibition shall require a majority of the authorized membership of each House.
The committee noted that this resolution is in response to the State Supreme Court decision in The General Assembly v. Brendan T. Byrne and The Senate v. Brendan T. Byrne, 90 N.J. 376 (1982). In that decision, the court stated that P.L. 1981, c. 27, The Legislative Oversight Act (C. 52:14B-4.1-4.9), was unconstitutional because it violated the separation of powers by giving the Legislature excessive power to impede the Executive in its constitutional mandate to faithfully execute the law. The decision went on to state that by allowing the Legislature to control agency rule-making with a legislative veto, the functions of agencies charged with enforcing statutes would be impaired, thereby frustrating the Executive's mandate to execute the law.
It was further stated by the court that the act permits the Legislature to effectively amend and repeal existing laws without the participation of the Governor. This was held to be an exercise of legislative power that the Constitution forbids.
The New Jersey Taxpayers Association presented opposition to the resolution by stating that the use of the constitutional amendment cannot reverse the principle that the technique proposed for oversight of rules and regulations still *50 violates the separation of powers doctrine and would still impede the Executive in its constitutional mandate to faithfully execute the law.[1]
The resolution was adopted by the General Assembly. The proposed amendment was reconsidered by the Legislature in 1984 as it had passed by a majority but not three-fifths of each house of the Legislature in 1983. See N.J. Const. (1947), Art. IX, par. 1. In 1984 the resolution was renumbered as Senate Concurrent Resolution No. 107. The proposed amendment, question for the ballot and interpretive statement were identical with that in the earlier resolution. However the statement attached to the resolution differed from that of a year earlier and recited:
This constitutional amendment provides the Legislature with the authority to prohibit proposed administrative rules from taking effect and to invalidate existing rules. This concurrent resolution is identical to Senate Concurrent Resolution No. 133 of 1982 which passed both Houses in 1983. Pursuant to the Constitution, it will be submitted to the voters in the general election following its passage again in 1984 in both Houses.
The resolution was adopted by a majority of each House in 1984 and thus the proposed amendment has been placed on the ballot at the 1985 general election.[2] The secretary of state has taken the position that although she has been advised that Resolution No. 133 has several ambiguities and is susceptible to competing interpretations she will place the proposed amendment on the ballot unless otherwise instructed by the courts. The attorney general has appealed from her decision to this court. As set forth in his brief, he seeks an injunction barring the secretary of state from placing the issue on the ballot. The Senate and General Assembly have been permitted to intervene as respondents in this case.
The attorney general argues that the language of Senate Concurrent Resolution No. 133 is so ambiguous and subject to *51 conflicting interpretations that the proposed amendment should not be placed on the ballot. He admits that the proposed amendment could be interpreted as an attempt to "overturn" General Assembly of State of New Jersey v. Byrne, supra, 90 N.J. at 376. But he points out that the interpretive statement for the ballot makes no reference to that case nor does the constitutional amendment expressly authorize the Legislature to act by concurrent resolution. He argues that the placement of the amendment in Art. V, § 4, par. 6 dealing with procedures concerning administrative rules rather than Art. III, par. 1 or Art. V § 1, par. 14, the separation of powers and presentment clauses of the Constitution, indicates the Legislature simply intended that the amendment be "confirmatory of existing law  as set forth by the Supreme Court's opinion in General Assembly v. Byrne." He argues that the authorization of the Legislature to act by majority vote would not preclude submission of its enactment to the governor under the presentment clause.
The attorney general further contends that if the Legislature intended to "work a substantial change in the very framework of State government" by overruling General Assembly of State of New Jersey v. Byrne, supra, 90 N.J. at 376, it would have said so in the interpretive statement to be published with the question on the ballot. He reads the various statements already quoted in the resolutions and by the committees as not evidencing a clear intent to overrule the Supreme Court. He concludes that because the intent of the Legislature in submitting the amendment is so unclear the only solution "is to strike SCR 133 from the November 5, 1985 General Election ballot."
The intervenors find no ambiguity in the proposed amendment or the interpretive statement for the ballot. They contend that the amendment was proposed to avoid the decision in General Assembly of State of New Jersey v. Byrne, supra, 90 N.J. at 376, and neither the proposed amendment nor the interpretive statement is ambiguious. The intervenors also contend that this court should not rule as the action is premature *52 for the amendment may be rejected by the voters. The intervenors contend the attorney general is really seeking an advisory opinion that the proposed amendment violates the separation of powers and presentment clauses of the Constitution, a challenge they contend should be postponed until the voters approve the amendment if they do so.
The secretary of state takes no substantive position in this case as she regards her function as ministerial. Thus she proposes simply to follow the direction of the court. She does, however, urge that the case be decided promptly because of the time constraints imposed by L. 1985, c. 92, amending N.J.S.A. 19:14-1.
We reject the intervenors' contention that the controversy is not ripe for resolution. This case does not involve an abstract or hypothetical question nor does it concern the validity of the amendment if adopted. Rather it deals with the concrete question of whether the electorate has been reasonably advised of what it is being asked to consider. We are satisfied that if a proposed amendment and interpretive statement suffer from an ambiguity so fundamental that a voter could not intelligently understand their effect, a court in an appropriate proceeding in advance of the election should grant relief. See N.J. Const. (1947), Art. IX, par. 3; N.J.S.A. 19:3-6; Gormley v. Lan, 88 N.J. 26 (1981); Camden Cty. Freeholder Bd v. Camden Cty. Clerk, 193 N.J. Super. 100, 110 (Law Div. 1983), aff'd 193 N.J. Super. 111 (App.Div. 1983); Young v. Byrne, 144 N.J. Super. 10 (Law Div. 1976); Bauch v. Anderson, 178 Colo. 308, 497 P.2d 698 (1972).
We also reject the contention of the attorney general that the proposed amendment is so ambiguous that it should not be placed on the ballot. While it is true that a constitutional authorization for the Legislature to act by majority vote is not inherently inconsistent with the submission of the legislative product to the Governor under the presentment clause, we are satisfied that the Legislature did not contemplate any such *53 submission. In fact, the Legislature already has the power to enact legislation for presentation to the Governor invalidating an administrative rule. Thus if the proposed amendment does not authorize adoption of a procedure similar to that in the unconstitutional Legislative Oversight Act it would have no real impact. Of course we are loathe to adopt an interpretation rendering a constitutional amendment meaningless. See Manning v. Public Service Elec. & Gas Co., 58 N.J. Super. 386, 394 (App.Div. 1959). We further point out that the timing of the resolution indicates its drafters had an intent to vest in the Legislature a power denied it under General Assembly of State of New Jersey v. Byrne, supra, 90 N.J. at 376. As we have already noted the resolution was introduced on the same day as that decision. It is simply not conceivable that the senators were rushing to deny themselves specifically the power of legislative oversight and thus reinforce the Supreme Court decision. Finally we note that the legislative history as reflected in the statements attached to the resolution and those of the committees already quoted, though not completely clear, certainly indicate an intent to grant new powers to the Legislature.
Our conclusion that the proposed amendment should be placed on the ballot does not end this matter. The attorney general has contended that even if the amendment is not misleading the interpretive statement required by N.J.S.A. 19:3-6 is invalid. In Gormley v. Lan, supra, 88 N.J. at 26, Supreme Court held that the statement should help the voter understand more about the amendment than does the question itself. Further, while the form of the statement may vary, it must be fair. 88 N.J. at 37-38. Of course we recognize that when a statement is administratively prepared it must be given deference so that a court should rarely intervene to require its change. 88 N.J. at 38-39. Certainly a legislatively prepared statement is entitled no less deference.
*54 Notwithstanding this restraint we must and will intervene in this case. The interpretive statement is highly misleading. It recites that the Legislature has the duty to review administrative regulations to see if they carry out legislative intent and are efficient and effective. The statement then indicates that the amendment provides a constitutional recognition of this oversight role by permitting the Legislature to prohibit proposed rules from taking effect and to invalidate existing rules. The difficulty with the statement is that while it appears to indicate the amendment involves only a routine housekeeping matter, somehow furthering a power the Legislature already has, its real purpose is an attempt to limit the application of the separation of powers and presentment clauses of the constitution, fundamental clauses of great importance. Thus the amendment may reasonably said to be intended to alter the basic relationship between the executive and legislative branches of government. See Immigration and Naturalization Service v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). While the voters may be privileged to this, the Legislature must take reasonable steps to insure that the voters recognize what they have been asked to do.
In view of the result we reach the matter must be remanded to the Legislature for preparation of a new interpretive statement.[3] However because of the time constraints with respect to preparation of ballots we follow the procedure followed by the Supreme Court in Gormley v. Lan, supra, 88 N.J. at 26. There the court suggested but did not mandate a form of interpretive statement. We suggest but do not mandate the use of the following statement:

*55 State executive agencies are authorized to issue rules and regulations which have the force and effect of law. The Legislature may review those rules and regulations from time to time in order to determine whether they conform with the intent of the statutes. The Supreme Court of New Jersey has ruled that under the New Jersey Constitution in general the Legislature may not invalidate an executive rule or regulation except by adopting legislation subject to the Governor's veto. This amendment addresses that Supreme Court ruling by modifying the New Jersey Constitution to allow the Legislature to invalidate executive rules and regulations without enacting legislation and without presenting the issue to the Governor. Its enactment would constitute a fundamental change in the relationship between the co-equal branches of government.
In reaching our result we do not pass upon the substantive validity of the amendment. Rather we are dealing solely with the procedural aspects of the presentation of the issue.
In summary we make the following disposition of the case. The attorney general's request to enjoin the placement of the proposed amendment on the ballot is denied but the interpretive statement is declared invalid and its use is enjoined. The matter is remanded to the Legislature to prepare a statement complying with N.J.S.A. 19:3-6. We retain jurisdiction so that any party may apply for such further orders as the circumstances may warrant.
NOTES
[1] Of course the statements attached to the resolution and issued by the legislative committees will not appear on the ballot.
[2] The resolution was not adopted in 1984 in time for inclusion on the ballot that year.
[3] The Supreme Court in Gormley v. Lan, supra, 88 N.J. at 44-45, indicated that the attorney general had the discretion to determine the form of the interpretive statement. But in that case the Legislature had not drawn the interpretive statement in the first instance. We do not think the court would have said that the attorney general had discretion to determine the form of the statement if the Legislature had done so.