262 N.J. Super. 469 (1993)
621 A.2d 484
IN THE MATTER OF THE ADOPTION OF REGULATIONS GOVERNING THE STATE HEALTH PLAN, N.J.A.C. 8:100, ET SEQ.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1992.
Decided February 10, 1993.
*473 Before Judges ANTELL, DREIER and SKILLMAN.
Frank R. Ciesla argued the cause for appellant New Jersey Hospital Association (Giordano, Halleran & Ciesla, attorneys; Mr. Ciesla, of counsel; Elizabeth Dusaniwskyj and Bryan N. Schulman, on the brief).
Donald M. Palombi, Deputy Attorney General, argued the cause for respondent Department of Health (Robert J. Del Tufo, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General; Mr. Palombi, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal involves the constitutionality of the part of chapter 31 of the Laws of 1992, N.J.S.A. 26:2H-5.8(a), which restricts the authority of the Department of Health to adopt regulations relating to the issuance of certificates of need.
To place this issue in proper perspective, it is necessary to set forth the history of the legislation authorizing the certificate of need regulatory program and the events leading up to the enactment of chapter 31. On May 10, 1971, the Legislature enacted the Health Care Facilities Planning Act, L. 1971, c. 136, N.J.S.A. 26:2H-1 to -26, which confers broad authority upon the Department of Health over health planning. *474 One of the central provisions of the Act was a requirement that "[n]o health care facility shall be constructed or expanded, and no new health care services shall be instituted ... except upon... receipt of a certificate of need." L. 1971, c. 136, § 7; N.J.S.A. 26:2H-7. The Act provided legislative standards to govern the Department of Health's review of applications for certificates of need:
No certificate of need shall be issued unless the action proposed in the application for such certificate is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services.

[L. 1971, c. 136, § 8; N.J.S.A. 26:2H-8.]
The Act also set forth other more specific considerations to guide the Department's review of certificate of need applications. Ibid. In addition, the Act authorized the Commissioner of Health to adopt "criteria and standards" for the issuance of certificates of need. L. 1971, c. 136, § 9; N.J.S.A. 26:2H-9.
On July 1, 1991 the Legislature amended the Health Care Facilities Planning Act by enacting the Health Care Cost Reduction Act, L. 1991, c. 187. This amendment established a new agency within the Department of Health, called the State Health Planning Board, N.J.S.A. 26:2H-5.7, and directed the Board to prepare a "State Health Plan." L. 1991, c. 187, § 34; N.J.S.A. 26:2H-5.8(a). The amendment provided that "[t]he State Health Plan shall identify the unmet health care needs in an area by service and location and it shall serve as the basis upon which all certificate of need applications shall be approved." Ibid. To conform with this new provision, N.J.S.A. 26:2H-8 was amended to provide that "[n]o certificate of need shall be issued unless the action proposed in the application for such certificate is consistent with the health care needs identified in the State Health Plan...." L. 1991, c. 187, § 31. In addition, the amendment required the Department to adopt the State Health Plan pursuant to the Administrative Procedure Act (APA), subject to the approval of the Health Care Administration *475 Board (HCAB). L. 1991, c. 187, § 34; N.J.S.A. 26:2H-5.8(a).
Pursuant to this legislation, the Planning Board drafted several portions of a proposed State Health Plan. Following its review of this draft, the Department of Health proposed that certain parts of the Plan be adopted as regulations. On April 6, 1992, the proposed new regulations, which addressed seven substantive areas, were published in the New Jersey Register as N.J.A.C. 8:100-1 to -18.18, 24 N.J.R. 1164. Thereafter, the Department held public hearings and received voluminous written comments regarding the proposed regulations. See Summary, 24 N.J.R. 2562-65. The HCAB approved the regulations on June 18, 1992 and the Commissioner of Health adopted them on June 25, 1992.
Four days later, on June 29, 1992, the Legislature amended the Health Care Cost Reduction Act and Health Care Facilities Planning Act over the Governor's veto by enacting chapter 31. This legislation amends N.J.S.A. 26:2H-5.8 to delete the requirements that the State Health Plan serve as the basis for all certificate of need applications and that it be adopted pursuant to the APA. Instead, chapter 31 provides that the Plan will serve as "an advisory document, which may be considered when certificate of need applications are reviewed for approval." N.J.S.A. 26:2H-5.8(a). In addition, chapter 31 imposes a restriction upon the Department's authority to adopt regulations, which reads as follows:
Effective May 15, 1992, notwithstanding any other provision of law to the contrary, neither [HCAB] or the Department of Health shall adopt any regulation which implements any goals, objectives or any other health planning recommendations that have been included in the State Health Plan prepared by the State Health Planning Board.

[N.J.S.A. 26:2H-5.8(a).]
Chapter 31 also amends N.J.S.A. 26:2H-5.8(b) and 26:2H-8 to reflect the new advisory status of the State Health Plan.
*476 The Commissioner of Health then requested an Attorney General's opinion regarding the constitutionality of chapter 31. In response, the Attorney General issued an opinion which concluded that the part of chapter 31 which prohibits the Department of Health from adopting any regulation "which implements any goals, objectives or any other health planning recommendations that have been included in the State Health Plan" violates the separation of powers and due process provisions of the New Jersey Constitution. N.J. Const. art. I, ¶ 1; art. III, ¶ 1. Consequently, the Attorney General advised the Department that it could adopt regulations that were premised on the goals, objectives and recommendations of the Plan. The Attorney General also advised the Department that the part of chapter 31 which makes the State Health Plan only advisory is constitutional.
After receiving the Attorney General's opinion, the Department adopted a final revised version of N.J.A.C. 8:100-1 to -18.18, prescribing standards for the review of applications for certificates of need for certain kinds of health care facilities and services.
Shortly thereafter, the New Jersey Hospital Association filed this appeal challenging the validity of the newly adopted certificate of need regulations on the ground that they are inconsistent with chapter 31. The Hospital Association also argues that the regulations are arbitrary, capricious, and unreasonable and that they differ so substantially from the originally proposed regulations that the Department was required under the APA to republish them before final adoption. We granted the Hospital Association's motion for a stay of the regulations pending the outcome of the appeal.
The Department of Health concedes that if chapter 31 is constitutional, its regulations establishing standards for the review of certificate of need applications are invalid in their entirety. We conclude that chapter 31 is constitutional. Therefore, based on the Department's concession, the certificate of *477 need regulations codified as N.J.A.C. 8:100-1 to -18.18 are invalid. This conclusion makes it unnecessary for us to consider the Hospital Association's other arguments.

I
A court's review of any constitutional challenge to a statute is governed by well established principles. The "high prerogative" of judicial review of the constitutionality of legislation must be "... exercised with extreme self-restraint, and with a deep awareness that the challenged enactment represents the considered action of a body composed of popularly elected representatives." New Jersey Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 8, 292 A.2d 545 (1972), appeal dismissed sub. nom. Borough of East Rutherford v. New Jersey Sports & Exposition Auth., 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972). Consequently, a court "... cannot concern itself with the wisdom or policy of a statute. Such matters are the exclusive concern of the legislative branch, and the doctrine is firmly settled that its enactment may not be stricken because a court thinks it unwise." Ibid. Consistent with these principles of judicial restraint, a court will construe a statute in a manner which will preserve its constitutionality if the statute is reasonably susceptible to that interpretation. New Jersey Bd. of Higher Educ. v. Shelton College, 90 N.J. 470, 478, 448 A.2d 988 (1982).
Since this appeal involves the constitutionality of a statute which restricts the authority of an administrative agency to adopt regulations, we begin with a brief review of the evolution of agency rule-making. The adoption by an agency of a rule or regulation constitutes a form of legislating. Mistretta v. United States, 488 U.S. 361, 386-87 n. 14, 109 S.Ct. 647, 662, 102 L.Ed.2d 714, 740 (1989); Immigration and Naturalization Serv. v. Chadha, 462 U.S. 919, 953 n. 16, 103 S.Ct. 2764, 2785, 77 L.Ed.2d 317, 346 (1983); Enourato v. New Jersey Bldg. Auth., 90 N.J. 396, 411, 448 A.2d 449 (1982) (Schreiber, J., *478 concurring); Boller Beverages, Inc. v. Davis, 38 N.J. 138, 151, 183 A.2d 64 (1962); Kenneth Culp Davis, 1 Administrative Law Treatise § 2.4 at 71-72 (2d ed. 1978). Consequently, in the early development of administrative law, the scope of legislative authority to delegate law-making authority to agencies in the executive branch of government was considered a troublesome issue. See Panama Ref. Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); Van Riper v. Traffic Telephone Workers Fed'n of N.J., 2 N.J. 335, 66 A.2d 616 (1949); Davis, supra, § 3.8. However, it is now firmly established that the Legislature has the constitutional power to delegate broad rule-making authority to an administrative agency. Lichter v. United States, 334 U.S. 742, 774-87, 68 S.Ct. 1294, 1311-17, 92 L.Ed. 1694, 1720-27 (1948); In re Egg Harbor Assocs., 94 N.J. 358, 372-73, 464 A.2d 1115 (1983); Cammarata v. Essex County Park Comm'n, 26 N.J. 404, 410, 140 A.2d 397 (1958); Davis, supra, §§ 3.6, 3.7. As the court noted in Ward v. Scott, 11 N.J. 117, 123-24, 93 A.2d 385 (1952), "... the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments." Therefore, it is commonplace for legislative standards governing an administrative agency to be expressed in broad, general terms, on the assumption that the agency will implement its enabling legislation through the adoption of more detailed standards. See General Assembly of N.J. v. Byrne, 90 N.J. 376, 392, 448 A.2d 438 (1982); In re Heller, 73 N.J. 292, 301-04, 374 A.2d 1191 (1977).
But it is the Legislature which determines whether to delegate rule-making authority to an administrative agency and, if so, the nature and scope of that authority. An administrative agency is entirely a creation of its enabling legislation. General Assembly of N.J. v. Byrne, supra, 90 N.J. at 393, 448 A.2d 438 ("Administrative agency power derives solely from a grant of authority by the Legislature."). Therefore, the Legislature *479 may set forth sufficient standards to guide an agency's exercise of its delegated authority, withholding all rule-making authority from the agency. Consumer Energy Council of Am. v. Federal Energy Regulatory Comm'n, 673 F.2d 425, 476 (D.C. Cir.1982), aff'd without opinion sub. nom., Process Gas Consumers Group v. Consumer Energy Council of Am., 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402 (1983). Alternatively, the Legislature may delegate rule-making authority to an agency, but restrict its scope or prohibit its exercise with respect to certain subjects. In addition, if the Legislature concludes that an agency has adopted a regulation which exceeds its delegated authority or which conflicts with sound public policy, the Legislature may enact a statute which supersedes and overrides the regulation. Kimmelman v. Burgio, 204 N.J. Super. 44, 53, 497 A.2d 890 (App.Div. 1985); see also Consumer Energy Council of Am. v. Federal Energy Regulatory Comm'n, supra, 673 F.2d at 470.
Legislative primacy with respect to agency rule-making recently has been reconfirmed and expanded by the passage of a constitutional amendment which confers authority upon the Legislature to disapprove by concurrent resolution any agency rule or regulation which is inconsistent with legislative intent. N.J. Const. art. V, § 4, ¶ 6 (as amended November 3, 1992). Chapter 31 is not directly affected by this new constitutional amendment, because it was enacted prior to the amendment's effective date. However, this amendment constitutes a contemporaneous expression by the electorate of the proper allocation of authority between the Legislature and state administrative agencies regarding administrative rules and regulations. Therefore, the amendment provides an appropriate guide in the interpretation of the constitutional provisions in effect when chapter 31 was enacted. Cf. State v. Bey, 112 N.J. 45, 101, 548 A.2d 846 (1988); Borough of Matawan v. Monmouth County Bd. of Taxation, 51 N.J. 291, 299, 240 A.2d 8 (1968).
*480 Given the Legislature's primary role in the delegation of rule-making authority to administrative agencies, we conclude that chapter 31 is consistent with the separation of powers provision of Article III of the New Jersey Constitution. As discussed previously, chapter 31 is the most recent in a series of amendments to the Health Care Facilities Planning Act which have expanded, reduced or refined the Department of Health's powers regarding the issuance of certificates of need and health care planning generally. The enactment of the Cost Reduction Act reflected among other things a legislative judgment that it would be desirable for the Department to adopt more detailed regulations relating to the review of certificate of need applications and for those regulations to play a more central role in reviewing such applications. Thus, the 1991 amendment provided that the Department should adopt a comprehensive State Health Plan, that the Plan should be adopted as an administrative regulation pursuant to the APA, and that no certificate of need could be issued unless the action it authorized was "consistent with the health care needs identified in the State Health Plan." However, when the Department implemented this new authority by adopting portions of a State Health Plan, the Legislature evidently was dissatisfied with the contents of the Plan and/or developed second thoughts regarding the desirability of delegating such extensive authority to the Department. Consequently, it enacted chapter 31, which repeals the part of the 1991 amendment to the Health Care Facilities Planning Act providing that no certificate of need may be issued unless it is "consistent with the health care needs identified in the State Health Plan," and instead provides that the State Health Plan "shall serve as an advisory document which may be considered when certificate of need applications are reviewed for approval." L. 1992, c. 31, § 1; N.J.S.A. 26:2H-5.8(a). Thus, to a substantial extent chapter 31 reinstates the provisions of the Act which had governed the review of certificate of need applications prior to 1991.
*481 Although the Department of Health concedes that the part of chapter 31 which makes the State Health Plan only advisory poses no constitutional problem, it argues, based on the Attorney General's opinion, that the part of chapter 31 which prohibits the Department from adopting any regulation which implements any goals, objectives or recommendations of the State Health Plan violates the constitutional principle of separation of powers. The Department contends that by enacting this provision the Legislature has "placed itself in the position of making regulatory choices for the Department on how health care issues should be confronted." According to the Department, this constitutes "an excessive intrusion" by the Legislature into the operation of the Executive Branch of government, thus violating the principle of separation of powers set forth in Article III of the New Jersey Constitution.
The Department's arguments misconceive the relationship between an agency's rule-making authority and the Legislature's plenary authority to amend the legislation creating an administrative agency. The Legislature does not lose the authority to control an agency's rule-making authority subsequent to enactment of the legislation creating the agency. It may amend the agency's enabling legislation to restrict its rule-making authority. See Consumer Energy Council of Am. v. Federal Energy Regulatory Comm'n, supra, 673 F.2d at 476 ("If Congress has given away too much power, it may by statute take it back or may in the future enact more specific delegations."); see also Immigration and Naturalization Serv. v. Chadha, supra, 462 U.S. at 953 n. 16, 103 S.Ct. at 2785, 77 L.Ed.2d at 346; General Assembly of N.J. v. Byrne, supra, 90 N.J. at 393, 448 A.2d 438. The Legislature also may enact legislation which overrides and supersedes any agency rule which the Legislature concludes is inconsistent with sound public policy. Kimmelman v. Burgio, supra, 204 N.J. Super. at 53, 497 A.2d 890.
*482 Chapter 31 constitutes a proper exercise of these fundamental legislative powers. This legislation reduces the Department of Health's rule-making authority relating to the certificate of need program by providing that the State Health Plan, and the goals, objectives and recommendations contained therein, shall be advisory only, which has the practical effect of increasing the significance of the general legislative standards contained in N.J.S.A. 26:2H-8. Chapter 31 also overrides the specific policy judgments reflected in the State Health Plan regulations adopted by the Commissioner of Health on June 25, 1992, which include the elimination of specific services in particular hospitals, N.J.A.C. 8:100-14.13, and authorization for the Commissioner of Health to amend a health facility's license to reduce its licensed bed capacity to reflect actual utilization, N.J.A.C. 8:100-14.4, and makes those provisions advisory recommendations rather than binding requirements. We see no violation of principles of separation of powers in this assertion of legislative authority.
In arguing that chapter 31 violates the separation of powers provision of the New Jersey Constitution, the Department places primary reliance upon General Assembly of N.J. v. Byrne, supra, 90 N.J. 376, 448 A.2d 438, which invalidated a statute authorizing the Legislature, with certain limited exceptions, to veto by concurrent resolution of both houses "[e]very rule hereafter proposed by a State agency." See also Communications Workers of Am. v. Florio, 130 N.J. 439, 457, 617 A.2d 223, 232 (1992).[1] However, General Assembly, and the companion case of Enourato v. New Jersey Bldg. Auth., supra, *483 90 N.J. 396, 448 A.2d 449 were concerned solely with the power of the Legislature, or individual members thereof, to exercise authority other than through the enactment of legislation pursuant to Article IV, section 4, paragraph 6 and Article V, section 1, paragraph 14, of the New Jersey Constitution. General Assembly involved a comprehensive system of legislative oversight of agency rule-making to be exercised by concurrent resolution of both houses without following the constitutionally proscribed procedure for the enactment of legislation. In its opinion, the Court pointed out that a "significant constitutional element of the separation of powers is the executive veto of legislation" authorized by the Presentment Clause of Article V, section 1, paragraph 14 of the New Jersey Constitution. Id. at 384, 448 A.2d 438. This executive veto power "... not only restrains legislative interference with executive enforcement of the law, but also conditions and restricts the Legislature's power to make new laws." Ibid. Consequently, "[a]ny legislative action that so removes the Governor from law making as to violate the Presentment Clause, Art. V, § 1, ¶ 14, threatens the separations of powers. Art. III, ¶ 1." Id. at 385, 448 A.2d 449. Later in its opinion, the Court gave a more detailed explanation of the essential constitutional deficiency in the Legislature's attempted authorization of the use of concurrent resolutions to invalidate agency rules:
[N]o legislative action may have substantial policy-making effects without the approval of the Governor or a two-thirds vote of both houses of the Legislature. The unlimited power to foreclose agency action granted [by the legislation authorizing the Legislature to invalidate an agency rule by concurrent resolution] allows [the Legislature] to nullify enabling legislation or to redirect its application as if the statute had been amended or repealed. Such law making replaces duly enacted statutes with laws made in contravention of the Constitution's required procedures.
[Id. at 389, 448 A.2d 449.][2]
*484 See also In re New York Susquehanna & W.R.R. Co., 25 N.J. 343, 348, 136 A.2d 408 (1957) ("a concurrent resolution is ... without legislative quality of any coercive or operative effect.").
In contrast, chapter 31 was duly enacted in conformity with the Constitution's required procedures when, subsequent to the Governor's veto, it was passed into law by a two-thirds vote of both houses of the Legislature. Thus, the enactment of chapter 31 fully complied with "the constitutional scheme of checks and balances in exercising policy-making power." General Assembly of N.J. v. Byrne, supra, 90 N.J. at 392, 448 A.2d 438.

II
The Department of Health also argues that chapter 31, insofar as it provides that the State Health Plan shall serve as an "advisory" document which may be "considered" by the Department even though it has not been adopted as a regulation, violates due process. The Department relies upon a statement in Department of Labor v. Titan Constr. Co., 102 N.J. 1, 17, 504 A.2d 7 (1985), which held that the Department of Labor was required to adopt rules and regulations before it could extend the debarment provisions of the Prevailing Wage Act to officers of corporations who violated the Act, that "[f]undamental principles of due process mandate that standards must be established to define the conduct that will result in individual debarment."
However, an administrative agency ordinarily possesses extremely broad authority, even in the absence of legislative restrictions upon its rule-making authority, to determine whether to act through rulemaking, adjudication or informal procedures. In re Solid Waste Util. Customer Lists, 106 N.J. 508, 518-21, 524 A.2d 386 (1987); Department of Envtl. Protection v. Stavola, 103 N.J. 425, 436-37, 511 A.2d 622 (1986); Crema v. New Jersey Dep't of Envtl. Protection, 94 N.J. 286, 299, 463 A.2d 910 (1983); Texter v. Department of Human *485 Servs., 88 N.J. 376, 383-86, 443 A.2d 178 (1982); In re Scioscia, 216 N.J. Super. 644, 658, 524 A.2d 855 (App.Div.), certif. denied, 107 N.J. 652, 527 A.2d 471 (1987); Radiological Soc'y v. New Jersey State Dep't of Health, 208 N.J. Super. 548, 557-60, 506 A.2d 755 (App.Div. 1986). Therefore, the procedures selected by an agency to perform its statutory responsibilities will be found to satisfy the requirements of due process unless those procedures are fundamentally unfair to affected parties. In re Solid Waste Util. Customer Lists, supra, 106 N.J. at 520-21, 524 A.2d 386; In re Scioscia, supra, 216 N.J. Super. at 659-60, 524 A.2d 855.
These same principles apply with equal, if not greater force, to a legislative determination that an agency's responsibilities should be discharged primarily based upon standards set forth in its enabling legislation rather than through the exercise of expansive substantive rule-making authority. A legislative restriction upon the method by which an agency shall exercise its delegated responsibilities reflects the judgment of the people's elected representatives that a particular regulatory program can be properly implemented through legislative standards. Therefore, such a legislative enactment must be sustained unless the legislative standards are manifestly inadequate.
The Health Care Facilities Planning Act, as amended by chapter 31, contains general standards to guide the Department's review of certificate of need applications, that is, whether a construction or expansion of a health care facility or new health care service
... is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, will not have an adverse economic or financial impact on the delivery of health care services in the region or Statewide, and will contribute to the orderly development of adequate and effective health care services.

[N.J.S.A. 26:2H-8.]
In addition, the Act directs the Department to take into consideration

*486 (a) the availability of facilities or services which may serve as alternatives or substitutes, (b) the need for special equipment and services in the area, (c) the possible economies and improvement in services to be anticipated from the operation of joint central services, (d) the adequacy of financial resources and sources of present and future revenues, (e) the availability of sufficient man-power in the several professional disciplines.... [Ibid.]
Furthermore, the Department retains the authority to adopt regulations relating to the certificate of need program, subject to the restrictions imposed by chapter 31 upon incorporation of provisions of the State Health Plan. The Department also retains the authority in reviewing an application for a certificate of need to consider the provisions of the State Health Plan, so long as its provisions are treated as advisory rather than binding. Therefore, the Health Care Facilities Planning Act, as supplemented by the forms of administrative action permitted under chapter 31, contains reasonably detailed standards to govern the Department of Health's review of certificate of need applications and thus satisfies due process requirements. See Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 329, 333, 478 A.2d 742 (1984); Airwork Serv. Div. v. Director, Div. of Taxation, 97 N.J. 290, 300-01, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
Finally, we reject the Department of Health's argument that the State Health Plan may not be considered even as an advisory document because chapter 31 prohibits its adoption pursuant to the APA. The rule-making procedures of the APA are purely a statutory rather than a constitutional mandate. See Avant v. Clifford, 67 N.J. 496, 554-57, 341 A.2d 629 (1975). Consequently, the Legislature may exempt a particular category of agency regulation, such as the advisory guidelines contained in the State Health Plan, from the APA rule-making procedures.
Accordingly, we hold that chapter 31 of the Laws of 1992 is constitutional, and that N.J.A.C. 8:100-1 to -18.18, which the Department of Health concedes is in conflict with chapter 31, is invalid.
NOTES
[1] In Communications Workers, decided after the argument of this appeal, the Court held that the provisions of the 1993 Appropriations Act mandating which classes of employees should be laid off to achieve budgetary savings infringed upon the Governor's constitutional powers as chief executive officer. Id., 130 N.J. at 459, 617 A.2d 223. Since Communications Workers involved solely the staffing of departments within the executive branch of government, it has no direct applicability to this case involving the amendment of legislation governing the rule-making authority of a state agency.
[2] As noted supra, 262 N.J. Super. at 479, 621 A.2d at 489, Article V, section 4, paragraph 6 of the New Jersey Constitution recently has been amended to authorize legislative invalidation of an administrative rule or regulation by adoption of a concurrent resolution.