690 A.2d 695

COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, PLAIN-TIFF–APPELLANT, v. NEW JERSEY DEPARTMENT OF PERSONNEL, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 10, 1997—Decided March 31, 1997.

Before Judges PETRELLA, LANDAU and KIMMELMAN.

*Weissman and Mintz*, attorneys for appellant (*Steven P. Weissman*, on the letter brief).

*Peter Verniero*, Attorney General, attorney for respondent (*Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Lewis A. Scheindlin*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff-appellant Communications Workers of America, AFL–CIO (CWA) appeals from a determination by the Commissioner of the Department of Personnel (Commissioner) to adopt two "pilot" programs: the "Rule of Ten" and the "Extension of Working Test Period", under authority assertedly provided by *N.J.S.A.* 11A:2–11i. The one-year programs are applicable to local government civil service employers. CWA asserts that the programs violate *N.J.S.A.* 11A:2–11i, itself, as well as *N.J.S.A.* 11A:4–8 and *N.J.S.A.* 11A:4–15.

We hold that the pilot programs exceed the scope of powers which may lawfully be delegated under *N.J.S.A.* 11A:2–11i; violate its plain language by administratively controverting and altering the express provisions of existing statutes; and that they should

not have been adopted without complying with the rule-making requirements of *N.J.S.A.* 52:14B–4.

Initially, we note that plaintiff has not appealed either from a rule or regulation adopted pursuant to *N.J.S.A.* 52:14B–4 or from an adjudicative ruling. The appeal contests a January 23, 1996 letter from the Commissioner dismissing CWA's objections to the implementation of the two pilot programs. The parties raise no jurisdictional questions.

Essentially, the appeal seeks declaratory relief, challenging the breadth, legality and constitutionality of the powers delegated to the Commissioner by *N.J.S.A.* 11A:2–11i and, implicitly, the amplification of that delegation by *N.J.A.C.* 4A:1–4.3. As adopted, that rule enables the Commissioner unilaterally to establish pilot programs not only "outside of Title 11A" but also "outside of" the duly adopted rules of the Department.[1]

Pursuant to *R.* 2:2–3(a)(3) appeals may be taken to the Appellate Division as of right "to review final decisions or actions of any state administrative agency." We treat the Commissioner's letter of January 23, 1996, as the final step before departmental implementation of the pilot-programs considered herein. *Compare Shapiro v. Albanese,* 194 *N.J.Super.* 418, 428–429, 477 *A.*2d 352 (App.Div.1984).

### The Statute and the Pilot Programs

■ *N.J.S.A.* 11A:2–11 provides, in pertinent part:

---

[1] *N.J.A.C.* 4A:1–4.3 provides, in part:

> (a) The Commissioner may establish pilot programs, not to exceed one year, *outside of the provisions of Title 11A, New Jersey Statutes, and these rules.*
> (b) Pilot programs may include, but are not limited to, the following:
> 1. Recruitment and selection;
> 2. Classification; and
> 3. Job sharing.
> [Emphasis provided.]

In addition to other powers and duties vested in the commissioner by this title or any other law, the commissioner:

i. May establish pilot programs and other projects for a maximum of one year *outside of the provisions of this title.*

[Emphasis provided.]

Pursuant to this provision and *N.J.A.C.* 4A:1–4.3, the Commissioner proposed the following plans, the first entitled the "Rule of Ten", which she described as follows:

This proposed pilot expands the list of people who can be hired from a certification, giving employers more choices in whom they can hire and supporting their goal of diversifying their workforce. At the same time, expanding to a "rule of ten" provides opportunities for more job candidates.

According to *N.J.S.A.* 11A:4–8 and *N.J.A.C.* 4A:4–4.2 . . . an appointing authority is entitled to select from among three (3) of the highest ranked eligibles on a certification in order to make a permanent appointment. This is generally known as the "rule of three."

In a nutshell, the "rule of ten" pilot program will increase the minimum number of names to be considered for selection from three to ten. This means that a participating appointing authority may appoint any eligible among the top ten interested and highest ranking eligibles on the certification provided that veterans preference rights are not affected.

. . . .

The requirements of *N.J.A.C.* 4A:4–4.8 still apply under the "rule of ten" when disposing of a certification. That is, the appointing authority shall provide a statement of the reasons why the appointee was selected instead of a higher ranked eligible or an eligible in the same rank due to a tied score.

The "Rule of Ten", as explained by the Commissioner, contravenes the express language of *N.J.S.A.* 11A:4–8, which provides:

The commissioner shall certify the three eligibles who have received the highest ranking on an open competitive or promotional list against the first provisional or vacancy. For each additional provisional or vacancy against whom a certification is issued at that time, the commissioner shall certify the next ranked eligible. If more than one eligible had the same score, the tie shall not be broken and they shall have the same rank. If three or more eligibles can be certified as the result of the ranking without resorting to all three highest scores, only those eligibles shall be so certified.

A certification that contains the names of at least three interested eligibles shall be complete and a regular appointment shall be made from among the eligibles. An eligible on an incomplete list shall be entitled to a provisional appointment if a permanent appointment is not made.

Eligibles on any type of reemployment list shall be certified and appointed in the order of their ranking and the certification shall be considered incomplete.

[*N.J.S.A.* 11A:4–8.]

The second pilot program authorized by the Commissioner, the "Extension of Working Test Period" program, provides in part:

This pilot extends the on-the-job evaluation period during which employers can assess candidates' suitability for their jobs—and during which employees can demonstrate their fitness for their positions through actual performance of their duties.

Currently, local government employees are subject to a working test period of a three (3) month duration. Local government appointing authorities consider this an insufficient period in which to evaluate employee performance. For example, those performing work of a seasonal nature should be evaluated during the peak time of year. To address these concerns, the working test period pilot has been designed to provide additional time to assess employee performance.

The "Extension of Working Test Period", as explained by the Commissioner, diverges from the express language of *N.J.S.A.* 11A:4–15, which provides:

The purpose of the working test period is to permit an appointing authority to determine whether an employee satisfactorily performs the duties of a title. A working test period is part of the examination process which shall be served in the title to which the certification was issued and appointment made. The commissioner shall provide for:

a. A working test period following regular appointment of *four months, which may be extended to six months at the discretion of the commissioner, except that the working test period for political subdivision employees shall be three months* and the working test period for entry level law enforcement, correction officer, and fire fighter titles shall be twelve months.

[*N.J.S.A.* 11A:4–15. Emphasis added.]

Initially, we question whether the legislature may constitutionally delegate to the executive branch unilateral power to deviate from express statutory provisions without specifically enumerating the provisions subject to experimental deviation and enunciating the statutory standards within which such power may be exercised. *See N.J. Bell Telephone Co. v. Communications Workers of America*, 5 *N.J.* 354, 370, 75 *A.*2d 721 (1950) ("[L]egislature may not vest unbridled or arbitrary power in the administrative agency but must furnish a reasonably adequate standard to guide it"); *State v. Traffic Telephone Workers' Federation of New Jersey*, 2 *N.J.* 335, 353, 66 *A.*2d 616 (1949) ("While there is no doubt that the legislature may delegate to an administrative body the exercise of a limited portion of its legislative power with respect to a specific subject matter, such delegation of legislative

power must always prescribe the standards that are to govern the administrative agency in the exercise of the powers thus delegated to it").

It is true that "minutely detailed standards in regulatory enactments" are no longer deemed necessary, *see In re State Health Plan,* 262 *N.J.Super.* 469, 478, 621 *A.*2d 484 (App.Div. 1993), *aff'd* 135 *N.J.* 24, 637 *A.*2d 1246 (1994) *citing Ward v. Scott,* 11 *N.J.* 117, 123–124, 93 *A.*2d 385 (1952), and that *N.J. Const.* art. V, § 4, ¶ 6 (as amended November 3, 1992) now "confers authority upon the Legislature to disapprove by concurrent resolution any agency rule or regulation which is inconsistent with legislative intent." *In re State Health Plan, supra,* 262 *N.J.Super.* at 479, 621 *A.*2d 484. Nonetheless, the requirement that the Legislature provide adequate standards to guide an agency in exercising delegated power remains vital. *See Flama Const. Corp v. Franklin Tp.,* 201 *N.J.Super.* 498, 493 *A.*2d 587 (App.Div.1985). "[T]here can be no unconstitutional delegation of legislative authority as long as the administrative discretion is hemmed in by standards sufficiently definitive to guide its exercise, 'such standards not necessarily being stated' in express terms if they may be reasonably inferred from the statutory scheme as a whole." [Citations omitted.] *Avant v. Clifford,* 67 *N.J.* 496, 553, 341 *A.*2d 629 (1975).

What makes the delegation and exercise of powers thereunder particularly problematical in the present case is that, apart from the dearth of any definitive standards, it is impossible to turn to the 'statutory scheme as a whole' for guidance because both pilot programs fly in the face of the statutory scheme as embodied in *N.J.S.A.* 11A:4–8 and 11A:4–15. Moreover, by adopting *N.J.A.C.* 4A:1–4.3, the Commissioner has arrogated to herself the power to ignore not only Title 11A but the Department's own rules in adopting pilot programs. Thus, as the pilot programs can be adopted without utilizing the rule-making processes set forth in *N.J.S.A.* 52:14B–4, such programs escape the legislative scrutiny provided under *N.J. Const.* Art. V, § 4 ¶ 6. We recognize that

*N.J.A.C.* 4A:1–4.3 indicates that pilot programs may include recruitment, selection and classification, but it gives no inkling of their intended means, nature or scope.

The Commissioner and the Legislature deem it appropriate to experiment with pilot programs in public employment. However, salutary as may be the goals of such experiments, the grant and exercise of a totally undirected and unstandardized agency power to deviate from existing legislation, insulated from the constraints attendant to rule making, is constitutionally insufficient.

> The requirement that standards accompany the delegation of power serves three basic purposes. First, it prevents the Legislature from abdicating its political responsibility and prevents undemocratic, bureaucratic institutions from wielding all-encompassing, uncontrollable government power. Second, limiting standards define the area in which the agency develops the experience and expertise that the legislature has neither the time nor resources to develop. With too broad a standard the agency stands in no better position than the legislature that created it. Third, and most important, standards facilitate judicial review of agency decisions, which guards against arbitrary and capricious governmental action. As long as the statutory standards achieve these purposes, such standards should be considered sufficiently definite to pass constitutional muster.
>
> [*Mt. Laurel Twp. v. Public Advocate,* 83 *N.J.* 522, 532–33, 416 *A.*2d 886 (1980).]

Nor does the process of judicial review in this case itself provide an adequate safeguard against arbitrary action, as it often does. *See e.g., Burton v. Sills,* 53 *N.J.* 86, 91, 248 *A.*2d 521 (1968) *appeal dismissed,* 394 *U.S.* 812, 89 *S.Ct.* 1486, 22 *L.Ed.*2d 748 (1969); Davis, *Administrative Law,* Sec. 2:05 at 35 (3d ed.1972). The absence of standards governing the pilot program delegation makes it impossible for us to review these exercises of power, and we are not at liberty to legislate our own standards.

The holding here makes it unnecessary to address in depth CWA's contention that, even if each of the pilot programs is upheld, any appointments made thereunder must expire at the end of the one year programs. We observe, however, that the words "outside the provision of this title" used in *N.J.S.A.* 11A:2–11(i) and *N.J.A.C.* 4A:1–4.3 cannot reasonably be interpreted to mean that while persons can be hired "outside" the statute, once hired, all of the protections of Title 11A inure to those hires. If that is

the intent, it too should be made clear in the legislation or, at least, by a rule which is subject to legislative oversight.

We reverse the ruling of the Commissioner, and hold that the pilot programs under review may not now be implemented for the reasons set forth above. It is up to the Legislature to consider whether it wishes to amend *N.J.S.A.* 11A:2–11(i) to provide standards for exercise of the delegated powers, and to clarify the meaning of "outside the provisions of this title." We refrain at this time from declaring unconstitutional the apparent breadth of the unstandardized delegation to the Commissioner. As the question is not before us, we do not decide whether Legislative oversight afforded by *N.J. Const.* Art. V, § 4, ¶ 6, coupled with appropriate departmental compliance with *N.J.S.A.* 52:14B–4, may together pass constitutional muster.