SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4912-13T3
                A-3041-14T3
                A-0230-15T3
                A-0232-15T3
                A-0274-15T3
                A-0275-15T3

COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO,

     Appellant,

v.

NEW JERSEY CIVIL SERVICE
COMMISSION,

     Respondent.

_____

COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO,

     Appellant,

v.

NEW JERSEY CIVIL SERVICE
COMMISSION,

     Respondent.

_____

IN THE MATTER OF JOB BANDING
FOR SOFTWARE DEVELOPMENT
SPECIALIST 1 AND 2, AND
NETWORK ADMINISTRATOR 1 AND
2, OFFICE OF INFORMATION
TECHNOLOGY.

_____

IN THE MATTER OF CHANGES IN
THE STATE CLASSIFICATION PLAN

**APPROVED FOR PUBLICATION**

**December 1, 2016**

**APPELLATE DIVISION**

AND JOB BANDING REQUEST,
DEPARTMENT OF TRANSPORTATION.

———————————————————

IN THE MATTER OF CHANGES IN
THE STATE CLASSIFICATION PLAN
AND JOB BANDING REQUEST,
DEPARTMENT OF TRANSPORTATION.

———————————————————

IN THE MATTER OF JOB BANDING
FOR SOFTWARE DEVELOPMENT
SPECIALIST 1 AND 2, AND
NETWORK ADMINISTRATOR 1 AND
2, OFFICE OF INFORMATION
TECHNOLOGY.

———————————————————

Argued November 9, 2016 — Decided December 1, 2016

Before Judges Yannotti, Fasciale and Gilson.

On appeal from the New Jersey Civil Service
Commission, Docket Nos. 2016-561, 2016-778,
and 2016-779.

Annmarie Pinarski argued the cause for
appellant Communication Workers of America,
AFL-CIO in A-4912-13, A-3041-14, and A-0230-
15 (Weissman & Mintz, L.L.C., attorneys;
Steven P. Weissman and Ms. Pinarski, on the
briefs).

Arnold Shep Cohen argued the cause for
appellant International Federation of
Professional & Technical Engineers, Local
195 in A-0232-15 (Oxfeld Cohen, P.C.,
attorneys; Mr. Cohen, of counsel and on the
brief).

Leon J. Sokol argued the cause for
appellants Stephen M. Sweeney, President of
the New Jersey State Senate, and Vincent
Prieto, Speaker of the New Jersey General
Assembly, the Senate and General Assembly in

2

A-0274-15 and A-0275-15 (Cullen and Dykman, L.L.P., attorneys; Mr. Sokol and Herbert B. Bennett, of counsel and on the briefs).

Peter Slocum, Deputy Attorney General, argued the cause for respondent New Jersey Civil Service Commission (Christopher S. Porrino, Attorney General, attorney; Mr. Porrino, Mr. Slocum and Wan Cha, on the briefs).

The opinion of the court was delivered by

FASCIALE, J.A.D.

In these six appeals, which we have consolidated for the purpose of rendering this opinion, the State Senate, Stephen M. Sweeney, President of the New Jersey Senate, the General Assembly, and Vincent Prieto, Speaker of the New Jersey Assembly (collectively the Legislature), Communications Workers of America, AFL-CIO (CWA), and the International Federation of Professional & Technical Engineers, Local 195 (IFPTE), challenge several final administrative agency decisions (the decisions) rendered by the Civil Service Commission (CSC) pertaining to a Job Banding Rule (the Rule), N.J.A.C. 4A:3-3.2A. The CSC adopted and implemented the Rule after the Legislature invoked its veto power, pursuant to N.J. Const. art. V, § 4, ¶ 6 (the Legislative Review Clause), finding in numerous concurrent resolutions that the Rule conflicted with the Civil Service Act (CSA), N.J.S.A. 11A:1-1 to 12-6, which incorporated the text of

N.J. Const. art. VII, § 1, ¶ 2.  For the reasons that follow, we conclude that the Legislature validly exercised its authority under the Legislative Review Clause and correctly invalidated the Rule.  We therefore reverse the decisions and vacate the implementation of that Rule, including any subsequent amendments.

## I.

We begin with a brief history of the Legislative Review Clause and related governing legal principles.  Doing so will inform our holding on our standard of review and our conclusion that the Legislature enjoys a limited constitutional power to determine whether any administrative rule or regulation is "consistent with the intent of the Legislature as expressed in the language of the statute which the rule or regulation is intended to implement."  N.J. Const. art. V, § 4, ¶ 6.

In 1981, the Legislature overrode Governor Brendan T. Byrne's veto and passed the Legislative Oversight Act, L. 1981, c. 27, N.J.S.A. 52:14B-4.1 to -4.9.  In general, the Legislative Oversight Act permitted legislative veto of administrative regulations by concurrent resolution of both houses.  In General Assembly v. Byrne, 90 N.J. 376, 378-79 (1982), the Court applied the then existing New Jersey Constitution, invalidated the Legislative Oversight Act, and stated:

We hold that the legislative veto provision in the Legislative Oversight Act, L. 1981, c. 27, violates the separation of powers principle that "[t]he powers of the government shall be divided among three distinct branches," N.J. Const. (1947), [art. III, ¶]1, by excessively interfering with the functions of the executive branch. The Legislature's power to revoke at will portions of coherent regulatory schemes violates the separation of powers by impeding the Executive in its constitutional mandate to faithfully execute the law. The legislative veto further offends the separation of powers by allowing the Legislature to effectively amend or repeal existing laws without participation by the Governor. This process also contravenes the Presentment Clause requirement that changes in legislative policy be effected by a majority vote of both houses of the Legislature and approval by the Governor or, after executive veto, by a two-thirds vote of both houses. N.J. Const. (1947), [art. V, § 1, ¶]14.

[(First alteration in original) (emphasis added).]

The Court found that

the broad and absolute legislative veto provision in L. 1981, c. 27, is both an excessive intrusion into executive enforcement of the law and an unconstitutional mechanism for legislative policy making beyond the Governor's control. The Legislative Oversight Act thereby gives the Legislature excessive power both in making the laws and in enforcing them. This violates the separation of powers and the Presentment Clause.

[(Id. at 379).]

5                                                        A-4912-13T3

The separation of powers doctrine tempers the use of governmental power. In New Jersey, the Framers created a government with three distinct branches, each a separate source of power that could check the potential abuses of the other branches. N.J. Const. art. III, ¶ 1 reads:

> The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

The Framers established a government of separated and balanced powers primarily because they feared "that in a representative democracy the Legislature would be capable of using its plenary lawmaking power to swallow up the other departments of the Government." Gen. Assembly, supra, 90 N.J. at 383 (quoting Consumer Energy Council of Am. v. Fed. Energy Reg. Comm'n, 673 F. 2d 425, 464 (D.C. Cir. 1982)). It has been the well-recognized constitutional role of the judiciary to prevent one branch of government from exercising illegitimate power over the other. Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 2 L. Ed. 60 (1803).

A-4912-13T3

The Presentment Clause, <u>N.J. Const.</u> art. V, § 1, ¶ 14, like that in the Federal Constitution, <u>U.S. Const.</u> art. I, § 7, cl. 2, states in relevant part:

> (a)  When a bill has finally passed both houses, the house in which final action was taken to complete its passage shall cause it to be presented to the Governor before the close of the calendar day next following the date of the session at which such final action was taken.
>
> (b)  A passed bill presented to the Governor shall become law:
>
> > (1)  if the Governor approves and signs it within the period allowed for his consideration; or,
> >
> > (2)  if the Governor does not return it to the house of origin, with a statement of his objections, before the expiration of the period allowed for his consideration; or,
> >
> > (3)  if, upon reconsideration of a bill objected to by the Governor, two-thirds of all the members of each house agree to pass the bill.

The Presentment Clause therefore "prevents the exercise of law-making power without the concurrence of both houses of the Legislature and approval by the Executive, unless the Legislature can muster a two-thirds majority vote of both houses to override the executive veto." <u>Gen. Assembly</u>, <u>supra</u>, 90 <u>N.J.</u> at 384.

A-4912-13T3

In response to the Court's decision in General Assembly, the Legislature immediately introduced concurrent resolution SCR-133 proposing an amendment to the New Jersey Constitution giving the Legislature the power to "invalidate any rule or regulation, in whole or part," and to "prohibit any proposed rule or regulation, in whole or part, by a majority of the authorized membership of each House."  The Attorney General appealed the decision of the Secretary of State to place the proposed constitutional amendment on the ballot, arguing the interpretive statement was confusing and that the language of SCR-133 was ambiguous.  See Kimmelman v. Burgio, 204 N.J. Super. 44, 47 (App. Div. 1985).

In Kimmelman, we concluded the proposed amendment should be placed on the ballot, but agreed the interpretive statement was misleading.  Id. at 53-54.  We suggested the interpretive statement be replaced with the following language:

> State executive agencies are authorized to issue rules and regulations which have the force and effect of law.  The Legislature may review those rules and regulations from time to time in order to determine whether they conform with the intent of the statutes.  The Supreme Court of New Jersey has ruled that under the New Jersey Constitution in general the Legislature may not invalidate an executive rule or regulation except by adopting legislation subject to the Governor's veto.  This amendment addresses that Supreme Court

A-4912-13T3

ruling by modifying the New Jersey Constitution to allow the Legislature to invalidate executive rules and regulations without enacting legislation and without presenting the issue to the Governor. Its enactment <u>would constitute a fundamental change in the relationship between the co-equal branches of government</u>.

[<u>Id.</u> at 55 (emphasis added).]

In 1985, this interpretive statement appeared on the ballot, but the voters rejected the sweeping proposed constitutional amendment.

Instead, seven years later, the voters approved amending the New Jersey Constitution with the text of the Legislative Review Clause, giving the Legislature limited power to invalidate an administrative rule or regulation, which states:

> No rule or regulation made by any department, officer, agency or authority of this state, except such as relates to the organization or internal management of the State government or a part thereof, shall take effect until it is filed either with the Secretary of State or in such other manner as may be provided by law. The Legislature shall provide for the prompt publication of such rules and regulations. <u>The Legislature may review any rule or regulation to determine if the rule or regulation is consistent with the intent of the Legislature as expressed in the language of the statute which the rule or regulation is intended to implement</u>. Upon a finding that an existing or proposed rule or regulation is not consistent with legislative intent, the Legislature shall transmit this finding in the form of a

A-4912-13T3

concurrent resolution to the Governor and the head of the Executive Branch agency which promulgated, or plans to promulgate, the rule or regulation. The agency shall have 30 days to amend or withdraw the existing or proposed rule or regulation. If the agency does not amend or withdraw the existing or proposed rule or regulation, the Legislature may invalidate that rule or regulation, in whole or in part, or may prohibit that proposed rule or regulation, in whole or in part, from taking effect by a vote of a majority of the authorized membership of each House in favor of a concurrent resolution providing for invalidation or prohibition, as the case may be, of the rule or regulation. This vote shall not take place until at least 20 calendar days after the placing on the desks of the members of each House of the Legislature in open meeting of the transcript of a public hearing held by either House on the invalidation or prohibition of the rule or regulation.

[N.J. Const. art. V, § 4, ¶ 6 (emphasis added).]

The Legislative Review Clause specifically addressed the Court's decision in General Assembly, supra, 90 N.J. at 379.

Pursuant to the unambiguous plain language of the Legislative Review Clause, the Legislature may review the rule or regulation to determine if it conforms to legislative intent, reflected in "language of the statute which the rule or regulation is intended to implement." N.J. Const. art. V, § 4, ¶ 6. In other words, the text of the Legislative Review Clause permits the Legislature to analyze two things: the State agency

administrative rule or regulation and the language of the statute.

## II.

In May 2012, the CSC established a pilot program for job banding in the CSC and the Department of the Treasury. Job banding means grouping certain job titles into one "band" and allowing advancement of employees from lower to higher titles in the same band without competitive promotional examination. The program included job banding the Human Resource Consultant, Personnel and Labor Analyst, State Budget Specialist, and Test Development Specialist title series.

In February 2013, the CSC filed a proposal (the proposal) to amend its regulations and implement the Rule. The proposal appeared in the March 2013 Register, 45 N.J.R. 500(a). The Proposed Rule (Proposed Rule) implemented job banding, redefining "promotion" to mean "movement to a title with a higher class code not in the employee's current job band."

According to the Proposed Rule, a "promotion" from a lower title to a higher title within a job band would be redefined as an "advancement appointment." Adopting the Proposed Rule would allow job bands and advancement of employees in the competitive service from lower to higher titles without the long-standing requirement for competitive promotional examination. The CSC

11

acknowledged this change by stating in its social impact statement accompanying the proposal that

> [o]rdinarily, to promote an employee to a higher title, both the appointing authority and interested eligibles are required to go through a process that consists of requesting an announcement, filing an application in order to determine eligibility to compete in an examination, developing an examination, conducting the examination, issuing an eligible list, certifying the list, and making appointments of reachable eligibles from the certification.

The practical effect of adopting the Proposed Rule would give appointing authorities greater discretion in selecting candidates for promotion to higher titles than would otherwise exist in a competitive examination system.

Between June 2013 and November 2014, the Legislature passed four sets of concurrent resolutions[1] finding that the Rule, in all its amended forms, contravened the CSA, which incorporated the plain text of N.J. Const. art. VII, § 1, ¶ 2. In June 2013, Assembly resolution ACR-199 and Senate resolution SCR-158 were introduced in the Legislature, pursuant to the Legislative

___

[1] June 2013 (ACR-199, which the Senate had substituted for SCR-158); January 2014 (ACR-215, which the Senate had substituted for SCR-166); June 2014 (SCR-116, which the Assembly had substituted for ACR-155); and November 2014 (ACR-192, and in December 2014, ACR-192, which the Senate had substituted for SCR-147).

Review Clause. The resolutions stated that the Legislature found the Proposed Rule was inconsistent with the legislative intent as reflected in the statutes governing appointments and promotions in the classified service. The Legislature passed ACR-199[2] after considering the Proposed Rule in light of the plain text of the CSA. The Legislature also noted the public policy, statutes, and constitutional provisions applicable to public employees' appointments and promotions in the competitive division of the classified service.

In these concurrent resolutions, the Legislature resolved that

> [1.] The proposed new [Rule] is contrary to the spirit, intent, and plain meaning of the provision in the New Jersey Constitution [N.J. Const. art. VII, § 1, ¶ 2, referenced in the CSA] that requires that promotions be based on merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive.
>
> [2.] The fact that the proposed new [R]ule would eliminate competitive promotional examinations for tens of thousands of positions for which such exams have been administered for decades is compelling evidence that it is practicable to continue to determine the merit and fitness of candidates for such promotional positions by competitive examination in accordance with the New Jersey Constitution.

---

[2]   The Senate substituted ACR-199 for SCR-158.

[3.] The proposed new [R]ule is not consistent with the legislative intent that the public policy of this State is to select and advance employees on the basis of their relative knowledge, skills and abilities, ensure equal employment opportunity at all levels of public service, and protect career public employees from political coercion.

[4.] The proposed new [R]ule is not consistent with the legislative intent that a competitive promotional examination process be established, maintained, and administered by the [CSC] to ensure that promotions are based on merit and fitness and are not based on patronage or discriminatory reasons.

[5.] The proposed new [R]ule is not consistent with the legislative intent that whenever a veteran ranks highest on a promotional certification, a nonveteran shall not be appointed unless the appointing authority shall show cause before the [CSC] why a veteran should not receive such promotion.

[6.] The proposed new [R]ule is not consistent with the intent of the Legislature as expressed in the language of the [CSA], including the spirit, intent, or plain meaning of N.J.S.A. 11A:3-1, N.J.S.A. 11A:4-1, N.J.S.A. 11A:4-8 or N.J.S.A. 11A:5-7.

The Legislature transmitted the concurrent resolutions to the CSC on December 4, 2013, and notified the CSC that it would have thirty days to "amend or withdraw" the Proposed Rule, or if there was no action, the Legislature may, by the passage of

another concurrent resolution, invalidate the Proposed Rule "in whole or in part."

On December 23, 2013, the CSC adopted amendments (the first amendments) to the Proposed Rule (the First Amended Proposed Rule). The first amendments, however, permitted the CSC to place titles in job bands and advance employees from lower to higher titles in a job band upon attaining certain "competencies." They also stated that veterans would receive the same preference in advancements within the band as they did in promotional settings in place at the time, limited the scope of job banding to State service, excluded law enforcement and public safety jobs from job banding, and stated that employees would retain the right to complain about discrimination in the advancement process.

These amendments did not change the provisions of the rule that allowed job banding of titles and promotions within those titles without competitive examinations. The first amendments therefore did not withdraw or substantively amend the Proposed Rule to cure its inconsistency with the statutory provisions of the CSA which require promotional competitive testing for appointments and promotions in the State's competitive service.

In January 2014, the Legislature passed concurrent resolution ACR-215,[3] which invalidated the First Amended Proposed Rule. Nevertheless, on May 7, 2014, the CSC disregarded the Legislature's veto and adopted the First Amended Proposed Rule with an effective date of June 2, 2014. The CWA appealed from the CSC's decision to adopt the First Amended Proposed Rule shortly thereafter.

In May 2014, another set of concurrent resolutions was introduced in the Legislature pursuant to the Legislative Review Clause. The Senate introduced SCR-116 and the Assembly introduced ACR-155. On June 12, 2014 and June 16, 2014, the Senate and the Assembly passed these concurrent resolutions, which mirrored ACR-199 and SCR-158, stating that the First Amended Rule remained inconsistent with legislative intent and added "[a]ny amended rule that contains a job banding provision or elimination of competitive promotional examinations shall be deemed by the Legislature as violating Article VII, [§ 1, ¶] 2 of the Constitution of the State of New Jersey and the [CSA.]" The Legislature transmitted SCR-116 and ACR-155 to the CSC on June 17, 2014.

---

[3] The Senate substituted ACR-215 for SCR-166.

A-4912-13T3

On July 16, 2014, the CSC proposed a second set of amendments (the Second Amended Proposed Rule). The Second Amended Proposed Rule stated that the "appointing authority would be required to obtain approval of the advancement appointment selection process from the Chairperson of the [CSC] or designee" before proceeding with its advancement appointment selection process. Furthermore, the Second Amended Proposed Rule stated that the appointing authority would have to rank candidates after determining which employees may receive an advancement appointment. The Second Amended Proposed Rule also retained for civil titles in State service the same components of the Proposed Rule, specifically, job banding and the lack of competitive promotional examinations, to which the Legislature fundamentally and repeatedly found to be inconsistent with the intent of the plain language of the statutes governing promotions in the competitive service.

Once again, concurrent resolutions were introduced in the Legislature: ACR-192 was introduced in the Assembly on September 29, 2014, and SCR-147 was introduced in the Senate on October 9, 2014. On October 22, 2014, the CSC adopted its Second Amended Proposed Rule. On November 13, 2014, the Assembly passed ACR-192, and on December 18, 2014, the Senate passed ACR-192, which the Senate had substituted for SCR-147. ACR-192 invalidated the

Second Amended Proposed Rule stating it remained inconsistent with legislative intent of the CSA and the civil service provision of the New Jersey Constitution.

In February 2015, the CWA wrote to the CSC asking whether the CSC planned to proceed with the Second Amended Proposed Rule, given the Legislature's numerous concurrent resolutions. On February 9, 2015, the CSC rendered its decision asserting that the Second Amended Proposed Rule was not invalidated by the Legislature. The CWA appealed from this decision.

In June 2015, the Office of Information Technology (OIT) submitted a proposal to the CSC to implement job banding for Software Development Specialist 1 and 2 and Network Administrator 1 and 2. In July 2015, the CWA requested that the CSC withhold a decision on whether to implement OIT's proposal to band job titles. On July 31, 2015, the CSC issued its decision approving OIT's job banding proposal. The Legislature and the CWA appealed from this decision.

In July 2015, the New Jersey Department of Transportation (NJDOT) submitted a proposal to the CSC to discontinue certain titles and consolidate others. The NJDOT proposed to assign seven job titles to the new Highway Operation Technician (HOT) Title Series and job band them pursuant to the Rule. This new title series included HOT Trainee, HOT 1, HOT 2, and HOT 3. On

A-4912-13T3

August 21, 2015, the CSC issued its decision approving the NJDOT's proposal. The Legislature and the IFPTE appealed from this decision.

### III.

On appeal, the Legislature, the CWA, and the IFPTE argue the Legislature possessed the constitutional power to veto the Rule; the Legislature followed the procedural process expressed in the Legislative Review Clause for invalidating the Rule; the Legislature's findings and conclusions contained in its concurrent resolutions are entitled to substantial deference; and the CSC's decision to ignore the Legislature's invalidation of the Rule amounted to a violation of the separation of powers doctrine.

We begin by addressing our standard of review applicable to the Legislature's findings and conclusions contained in its concurrent resolutions.

The Legislature argues our role is primarily limited to determining whether it followed procedural safeguards contained in the Legislative Review Clause. Relying on the Legislative Review Clause, the Legislature maintains "[t]here is [generally] no role for judicial review of the Legislature's findings that a regulation is contrary to legislative intent." The Legislature asserts we may reverse its concurrent resolutions only if its

19

findings and conclusions are repugnant to the New Jersey Constitution. The Legislature contends that a presumption of validity applies to its concurrent resolutions, and that we should afford the Legislature substantial deference and not second-guess its findings.

CWA, like the Legislature, asserts we should afford deference to the findings and conclusions contained in the Legislature's concurrent resolutions invalidating the Rule. CWA points out that here, unlike in a typical third-party challenge to a final agency decision, we are primarily reviewing whether the Legislature correctly exercised its veto power. CWA therefore emphasizes that the well-settled standards of review in typical agency appeals are inapplicable. The IFPTE also argues that if the Legislature properly exercises its constitutional veto power, an executive agency is "bound to adhere to the legislative will and not implement the invalidated regulation."

The CSC submits our role is not as limited as appellants advocate. The CSC emphasizes that we should conduct an exacting and thorough judicial review of the Legislature's findings and conclusions. It stresses that such a review is fundamental to our system of governmental checks and balances. The CSC urges judicial review of the Legislature's invalidation of the Rule to

20

avoid violations of the law in general, and particularly to ensure compliance with the separation of powers and presentment clauses of the New Jersey Constitution. The CSC argues that such an exhaustive judicial review is not precluded or limited in any way by the plain text of the Legislative Review Clause.

We agree that our general standard of review in appeals from final agency decisions is inapplicable. In a typical appeal from a final agency decision, which this is not, our capacity to review administrative actions "is severely limited," Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995), and we are not free to substitute our judgment for the "'wisdom of a particular administrative action'" as long as the action is statutorily authorized and not arbitrary or unreasonable. Gloucester Cty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 391 (1983) (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978)). Although such a standard has been well-recognized for years, the distinguishing factor obviating use of an administrative agency standard of review here is the substantial involvement of the Legislature pursuant to the Legislative Review Clause. We are not merely determining, as we would if this were a typical appeal from an agency decision, whether the CSC decisions were

arbitrary, capricious, or unreasonable, or whether they were otherwise unsupported by credible evidence in the record.

The plain text of the Legislative Review Clause does not, however, limit our traditional role of interpreting the law. And it does not preclude the judicial branch from exercising its role to enforce the checks and balances embodied in the State Constitution. The Legislative Review Clause does not negate the well-recognized role of the judiciary to safeguard the protections afforded in the constitution and to prevent any of the branches from potentially exercising illegitimate power over the other. As a result, we are not bound by the Legislature's interpretation of a statute. Such questions of law have always been within the province of the judicial branch.

We nevertheless conclude that the Legislature is entitled to substantial deference when it exercises its constitutional power to invalidate an administrative rule or regulation pursuant to the Legislative Review Clause. We do so because the legislative process for invalidating an administrative rule or regulation, established pursuant to the Legislative Review Clause, is procedurally rigorous, substantively precise, and most importantly, the Legislature possesses general expertise in the field of lawmaking.

We retain our authority, however, to review the Legislature's findings and conclusions to ensure the Legislature has validly exercised its veto power under the Legislative Review Clause, by invalidating the rule or regulation, rather than passing new legislation, subject to the presentment clause. We therefore hold that we may reverse the Legislature's invalidation of an administrative executive rule or regulation if (1) the Legislature has not complied with the procedural requirements of the Legislative Review Clause; (2) its action violates the protections afforded by the Federal or New Jersey Constitution; or (3) the Legislature's concurrent resolution amounts to a patently erroneous interpretation of "the language of the statute which the rule or regulation is intended to implement."

At least one other jurisdiction with even stronger language than that which appears in the Legislative Review Clause has likewise persuasively held that the judiciary is not precluded from reviewing the Legislature's veto power. For example, the Iowa constitution includes a broad provision allowing for nullification of administrative rules, which states that "[t]he general assembly may nullify an adopted administrative rule of a state agency by the passage of a resolution by a majority of all of the members of each house of the general assembly." Iowa

<u>Const.</u> art. III, § 40. The Iowa Supreme Court found that this provision did not preclude judicial review to determine if its legislative branch violated the law by invalidating an administrative rule or regulation. <u>Iowa Fed'n of Labor v. Iowa Dep't of Job Service</u>, 427 <u>N.W.</u> 2d 443, 447 (1988) (stating "[g]iven th[e] importance of the judiciary's oversight of agency rules, we doubt that article III, section 40 was intended to eliminate one of the three important checks over an agency's power to legislate").

## IV.

When reviewing a Legislative determination that an administrative rule or regulation contravenes the "language of the statute which the rule or regulation is intended to implement," we first analyze whether the Legislature complied with procedural requirements outlined in the Legislative Review Clause. <u>N.J. Const.</u> art. V, § 4, ¶ 6. Thereafter we afford the Legislature's conclusions and findings substantial deference, keeping in mind that the judiciary is the ultimate arbiter of questions of law.

### (i)

Here, the Legislature complied with the procedural requirements imposed by the Legislative Review Clause on two occasions. First, the Legislature passed ACR-199 after the CSC

proposed the Rule. In mid-December 2013, the CSC proposed a First Amended Proposed Rule, and in January 2014, the Legislature passed concurrent resolution ACR-215 to invalidate it. Although the CSC purportedly amended the Proposed Rule, the amendments did not alter the Rule's omission of competitive examinations in job banding.

Second, the Legislature passed SCR-116, which mirrored ACR-199, in June 2014. The Legislature stated that the job banding regulations were still inconsistent with legislative intent and "[a]ny amended rule that contains a job banding provision or elimination of competitive promotional examinations shall be deemed by the Legislature as violating Article VII, [§ 1, ¶] 2 of the Constitution of the State of New Jersey and the Civil Service Act[.]" After the CSC introduced a purported Second Amended Proposed Rule in July 2014, which still eliminated competitive promotional examinations for job banding, the Legislature passed ACR-192.

We reject the CSC's contention that its amendments to the Proposed Rule required the Legislature to begin the veto procedural process anew. The Legislature correctly invalidated the Proposed Rule, and the amendments consistently ignored the Legislature's steadfast substantive objection to job banding without competitive promotional examinations.

The Legislature determined that the Rule conflicts with the long-standing law in New Jersey requiring that appointment and promotions for the civil service in the competitive division shall be accomplished to ensure equal employment opportunity and shall be made according to merit and fitness, which is ascertained, as far as practicable, by competitive examination. That determination by the Legislature does not amount to a patently erroneous interpretation of the language of the CSA. Applying substantial deference to the Legislature, we discern no reason to disagree with the Legislature's determination.

In 1986, the Legislature found and declared the public policy regarding state employees. In N.J.S.A. 11A:1-2, the Legislature explicitly stated:

> a. It is the public policy of this State to select and advance employees on the basis of their relative knowledge, skills and abilities;
>
> b. It is the public policy of this State to provide public officials with appropriate appointment, supervisory and other personnel authority to execute properly their constitutional and statutory responsibilities;
>
> c. It is the public policy of this State to encourage and reward meritorious performance by employees in the public service and to retain and separate employees on the basis of the adequacy of their performance;

d.  It is the public policy of this State to ensure equal employment opportunity at all levels of the public service; and

e.  It is the public policy of this State to protect career public employees from political coercion and to ensure the recognition of such bargaining and other rights as are secured pursuant to other statutes and the collective negotiations law.

The Legislature recognized that the Constitution of the State of New Jersey specifically addressed appointments and promotions of public employees.  N.J. Const. art. VII, § 1, ¶ 2 states:

Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; except that preference in appointments by reason of active service in any branch of the military or naval forces of the United States in time of war may be provided by law.

[(Emphasis added).]

Consequently, in 1993, the Legislature made further findings and declarations as to civil service, classification, and compensation of public employees.  In N.J.S.A. 11A:3-2.1, the Legislature stated:

a.    the importance of fairness and impartiality in State employment is recognized in Article VII, Section I, paragraph 2 of the New Jersey Constitution

which provides that, "Appointments and promotions in the civil service of the State shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive";

b. nevertheless, the framers recognized that appointments to certain types of employment are not readily made through a competitive examination process;

c. accordingly, in implementing the constitutional provision, the Legislature has provided in N.J.S.[A.] 11A:3-2 that the career service shall have a competitive division and a noncompetitive division;

d. it was the purpose of the Legislature, in making this distinction, to provide for positions which cannot properly be tested for, such as lower-level jobs which do not require significant education or experience, to be filled without the need of competitive examination but with civil service protection for the employee;

e. however, recent published reports suggest that the purpose of the noncompetitive division has been subverted by the transfer into that division of titles which properly belong in the unclassified service or in the competitive division of the career service, and the making of appointments thereto;

f. the apparent reason for this misuse of the noncompetitive division is to protect political appointees prior to the beginning of a new administration; and

g. in order to prevent this abuse of the civil service system, there is need for a statutory prohibition on the movement of job titles and political appointees to the

noncompetitive division of the career service during the final six months of the Governor's term in office.

On the subject of competitive examinations, <u>N.J.S.A.</u> 11A:4-1 states that the CSC shall provide for:

a. The announcement and administration of examinations which shall test fairly the knowledge, skills and abilities required to satisfactorily perform the duties of a title or group of titles. The examinations may include, but are not limited to, written, oral, performance and evaluation of education and experience;

b. The rating of examinations;

c. The security of the examination process and appropriate sanctions for a breach of security;

d. The selection of special examiners to act as subject matter specialists or to provide other assistance. Employees of the State or political subdivisions may be so engaged as part of their official duties during normal working hours with the approval of their appointing authority. Extra compensation may be provided for such service outside normal working hours; and

e. The right to appeal adverse actions relating to the examination and appointment process, which shall include but not be limited to rejection of an application, failure of an examination and removal from an eligible list.

Furthermore, the CSC must meet certain certification and appointment obligations expressed in <u>N.J.S.A.</u> 11A:4-8, which provides that

29

The [CSC] shall certify the three eligibles who have received the highest ranking on an open competitive or promotional list against the first provisional or vacancy. For each additional provisional or vacancy against whom a certification is issued at that time, the [CSC] shall certify the next ranked eligible. If more than one eligible has the same score, the tie shall not be broken and they shall have the same rank. If three or more eligibles can be certified as the result of the ranking without resorting to all three highest scores, only those eligibles shall be so certified.

A certification that contains the names of at least three interested eligibles shall be complete and a regular appointment shall be made from among those eligibles. An eligible on an incomplete list shall be entitled to a provisional appointment if a permanent appointment is not made.

Eligibles on any type of reemployment list shall be certified and appointed in the order of their ranking and the certification shall not be considered incomplete.

Thus, the appointment and promotions of the civil service of New Jersey must be made based on merit and fitness except if impracticable. Recognizing that not all types of employment are readily discerned through a competitive examination process, the Legislature declared in N.J.S.A. 11A:3-2, that career service "shall have two divisions, the competitive division and the noncompetitive division." It is therefore well-established, and consistent with N.J. Const. art. VII, § 1, ¶ 2, that appointments and promotions of public employees in the civil

30                                                          A-4912-13T3

service "shall be . . . ascertained, as far as practicable, by examination[.]"

It is undisputed that competitive examinations have been used for years to test the merit and fitness of persons in the State's competitive service. This practice indicates that it is practicable to use such examinations for promotions in the competitive service, and if not, the CSC has the authority to move the title to the non-competitive service.

We therefore conclude that the Legislature validly exercised its authority under the Legislative Review Clause and invalidated the Rule. The Legislature's findings and conclusions, contained in its numerous concurrent resolutions, comply with the procedural requirements of the Legislative Review Clause, and do not violate constitutional protections, or do not amount to a patently erroneous interpretation of "the language of the statute which the rule or regulation is intended to implement." The Legislature reasonably found that job banding without competitive promotional examinations was inconsistent with the legislative intent reflected in the plain language of the relevant provisions of the CSA.

We therefore reverse the decisions and vacate the implementation of the Rule, including the subsequent amendments.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

31

A-4912-13T3